[Nos. 52657–5, 52885–3, 52902–7,   En Banc.      November 12, 1987.]
      52903–5, 52904–3.

WEYERHAEUSER COMPANY, *Respondent,* v. COWLITZ COUNTY, *Appellant.*

BURLINGTON NORTHERN RAILROAD COMPANY, *Appellant,* v. KING COUNTY, ET AL, *Respondents.*

WEYERHAEUSER COMPANY, *Respondent,* v. PIERCE COUNTY, *Appellant.*

BURLINGTON NORTHERN RAILROAD COMPANY, *Respondent,* v. PIERCE COUNTY, ET AL, *Appellants.*

WEYERHAEUSER COMPANY, *Respondent,* v. PIERCE COUNTY, *Appellant.*

*Henry R. Dunn, Prosecuting Attorney for Cowlitz*

County, and *David R. Koss, Deputy; William H. Griffies, Prosecuting Attorney for Pierce County,* and *Robert P. Dick, Deputy,* for appellants.

*Helmut Wallenfels,* for respondent Weyerhaeuser Co.

*Kurt W. Kroschel,* for Burlington Northern Railroad.

*Norm Maleng, Prosecuting Attorney,* and *Sandra L. Cohen, Deputy,* for respondent King County.

DOLLIVER, J.—In this consolidated action, counties and landowners dispute at what point the special forest land property tax rates created by RCW 84.33 should apply to land transferred from public ownership to private ownership.

Each of these cases is a property tax refund action brought by a large landowner, Weyerhaeuser Company or Burlington Northern Railroad Company. Each case originates from the plaintiff's acquisition of land from either the State of Washington or the United States. Taxes paid after the several land transfers took place led to refund lawsuits in the Superior Courts of Cowlitz, Pierce, and King Counties. All the cases were decided by summary judgment. The Cowlitz County and Pierce County cases resulted in judgments for the landowners. In King County, the court ruled for the County.

Cowlitz County. Weyerhaeuser received a quitclaim deed dated February 8, 1983, from the State for 10,580 acres. On April 8, 1983, Weyerhaeuser wrote to the Cowlitz County Assessor requesting the property be classified as forest land under RCW 84.33. The effect of the classification was to adjust the value used by the assessor in computing the property tax, resulting in a value less than the fair market value on most but not all of the parcels. The assessor complied, making the classification effective for taxes payable in 1984. For taxes payable during the portion of 1983 that Weyerhaeuser owned the property, however, the assessor applied the valuation already on the records as the property's fair market value. Weyerhaeuser paid the taxes calcu-

lated by the assessor for 1983, but under protest. Weyerhaeuser later filed this suit seeking a refund of the difference between the taxes actually paid for 1983 and taxes which would have been due had they been based on classified forest land values. Both parties moved for summary judgment. The court initially granted the motion for the County, but later reconsidered and entered a judgment on Weyerhaeuser's motion, awarding a total tax refund of $3,571.51 plus interest. The court stated the assessor should have valued the property as forest land under RCW 84.33 while it was publicly owned.

Pierce County—Weyerhaeuser cases. Weyerhaeuser received two quitclaim deeds for property in Pierce County, one for 880 acres dated August 24, 1984, the other for 7,744 acres dated December 18, 1984, from the State of Washington. Like the land in the Cowlitz County case, the properties here had been listed on the assessment rolls at their fair market value while owned by the State. Weyerhaeuser asked the assessor to classify or designate the properties as forest land under RCW 84.33, "effective January 1, 1985." The assessor complied, classifying or designating the property as forest land effective January 1, 1985 for taxes payable in 1986. For taxes payable in 1985 and the portion of 1984 that Weyerhaeuser owned the properties, however, the assessor calculated the tax based upon the fair market values previously carried on the assessment rolls. Weyerhaeuser paid the 1984 and 1985 taxes under protest, then brought separate refund actions, alleging the taxes should have been based on the RCW 84.33 forest land values rather than fair market values. The trial court granted summary judgment to Weyerhaeuser in both cases, awarding judgments of $3,053.74 plus interest, and $28,448.69 plus interest, respectively.

Pierce County—Burlington Northern case. Burlington Northern received a patent, dated August 20, 1982, recorded June 13, 1983, from the United States for property in Pierce County. The property was listed on the assessment rolls at its fair market value while it was owned

by the United States. After the transfer was recorded, the property was classified as forest land under RCW 84.33 effective January 1, 1984, for taxes payable in 1985. Burlington Northern contested the taxes it paid in 1984, which had been based on the fair market value of the property. The trial court granted a summary judgment for Burlington Northern, awarding a tax refund of $11,719.09 plus interest.

King County. Burlington Northern had also received a patent, dated August 20, 1982, from the United States for property in King County, recorded May 6, 1983. As with all the other properties involved in these cases, this property was listed on the assessment rolls at its fair market value while publicly owned. After the transfer was recorded, the property was classified effective January 1, 1984, for taxes payable in 1985. Burlington Northern contested the taxes paid in 1984 based upon the fair market value. The court granted summary judgment for King County and dismissed the complaint.

Cowlitz County appealed directly to this court. Pierce County appealed the three decisions to the Court of Appeals. Burlington Northern appealed the King County case to the Court of Appeals. The Counties' motion to consolidate the cases was granted, and the cases were retained for direct review by this court.

The Counties contend they acted properly under RCW 84.33 and RCW 84.40 in assessing the properties at fair market value while publicly owned, in classifying or designating the properties as forest land under RCW 84.33 only after transfer to private ownership, and in making the forest land classification or designation effective as of the January 1 following the transfer, for taxes payable the following year. (Counsel for Cowlitz County noted at oral argument the County has consolidated its position with King and Pierce Counties to advocate the use of the January 1 following the transfer, rather than predating the new assessment to the January 1 preceding the transfer, as it did here. All three counties now contend they have no authority to apply the forest land rates until the January 1

following the transfer.) The landowners contend the Counties had no authority to assess the property while it was publicly owned, or if they did have authority to assess the property during public ownership, it should have been as forest land under RCW 84.33, and regardless of whether the property was previously assessed, the Counties should have reassessed the properties under RCW 84.33 to be effective midyear when the transfers occurred.

## RCW 84.33

The central issue raised by the parties is the proper application of RCW 84.33, concerning the special valuation and taxation treatment of forest lands and its relationship to other statutory assessment and taxation procedures. RCW 84.33 creates a special system of taxation for property qualifying for treatment as forest land under its provisions. In order to qualify, the property must first meet the definition for forest land provided in RCW 84.33.100(1):

> "Forest land" is synonymous with timberland and means all land in any contiguous ownership of twenty or more acres which is primarily devoted to and used for growing and harvesting timber and means the land only.

Second, the property must be "classified" or "designated" as forest land. As we explained in *Wright v. Woodard,* 83 Wn.2d 378, 380, 518 P.2d 718 (1974):

> Under the statute, forest land, as defined therein, may be either classified (RCW 84.33.020) or designated (RCW 84.33.130). When the land has no higher or better use than as forest land and is being primarily used for the growing of timber, it is to be classified and valued at the timberland values established by the Department of Revenue (RCW 84.33.110, .120(1) and (2)). When lands being used for timber production have a higher and better use on the assessment date, they must be valued and assessed accordingly, unless the owner requests and is granted designation under RCW 84.33.130.

The landowner may "opt in" to this beneficial taxation system by applying for designated status as forest land under RCW 84.33.130, or may "opt out" of the program by giving notice to remove the property from classification as

forest land. RCW 84.33.120(3), (5)(a). The valuation of property under the Department of Revenue's values within this chapter generally results in a lower rate of taxation for the property than the fair market value, in keeping with the stated legislative policy to "encourage forestry and restocking . . . of . . . forests". RCW 84.33.010(1). If the owner agrees, however, to have the property valued and taxed under this chapter and then later "opts out", removing it from classification or designation, the landowner is subject to a compensating tax equal to any tax savings which had resulted from use of the Department of Revenue rates. RCW 84.33.120(7), .140(3).

Neither party disputes that the landowners were liable for property taxes once they received the property. Although RCW 84.36.010 exempts from taxation property owned by the United States, the State, or other public entities, RCW 84.40.360 states private recipients of publicly owned property "shall be subject to a pro rata portion of the taxes allocable to the remaining portion of the year after the date that the property lost its exempt status." The dispute concerns whether the landowners' tax liability should have initially been calculated based upon the RCW 84.33 forest land values, or whether RCW 84.33 can only be applied following a waiting period after transfer to private ownership.

January 1 assessment date. The Counties contend changes in assessments under RCW 84.33 only can take place as of January 1 of a given year for application to the taxes payable the following year and no midyear reassessments are required or allowed under the statute. The overall statutory assessment and taxation cycle for property created in RCW Title 84 is based upon a central assessment valuation date for all property of January 1 of the year preceding the year the taxes are payable. RCW 84.40.020. The assessment roll must then be completed by May 31. RCW 84.40.040. Appeals to the county board of equalization are heard in July. RCW 84.48.010. Taxes are then levied in October and sent out the following spring for

payment on April 30 and October 31. RCW 84.52.030, 84.56.020, .050.

■■ The provisions of the special forest land taxation scheme created in RCW 84.33 fully coordinate with this overall property taxation scheme based upon the January 1 assessment valuation date. The assessor must give written notice to the landowner of the intention to assess land under RCW 84.33 by January 15, and the landowner has until March 31 to notify the assessor if this is not desired. RCW 84.33.120(3). The assessor then determines the number of acres to be included and the grade to be assigned and gives written notice of the results to the owner by May 31, the same day the listing and valuation of all properties must be completed. RCW 84.33.116(1); RCW 84.40.040. The owner may then petition for corrections to the county board of equalization. RCW 84.33.116(2); RCW 84.48.010.

RCW 84.33 repeatedly refers to January 1 as the focal point in the procedure for classification or designation of qualifying land, reflecting a legislative intent to incorporate the forest land taxation scheme into the regular assessment cycle. For example, RCW 84.33.130(1) specifically establishes January 1 as the effective date for any *designation* of forest lands, and the landowner "shall make application to the county assessor *before* such January 1." (Italics ours.) This directly contradicts the trial court's decision regarding the *designated* properties involved in the Weyerhaeuser v. Pierce County cases since the required application was not made before the January 1 deadline. Another instance of use of the January 1 deadline is former RCW 84.33.120(1), which provides:

> In preparing the assessment rolls as of January 1, 1982, for taxes payable in 1983 and each January 1st thereafter, the assessor shall list each parcel of forest land at a value with respect to the grade and class provided [for classified land]. . . .

A January 1 commencement date for the application of the forest land rates also corresponds to the January 1 effective date for any subsequent removal of the property from the

forest land taxation scheme. The new assessment at regular, nonforest land, rates begins on January 1 of the year following the removal. RCW 84.33.120(7). The delay in applying the generally beneficial forest land tax valuation is thus balanced by the delay in removing the property from its forest land status.

If the assessor were required, as the landowners contend, to calculate a new valuation for these properties to be effective midyear for taxes payable that year, the assessor would be unable to comply with the January 15 statutory deadline for giving the required written notice, nor the subsequent deadlines for allowing the landowner to give notice of the desire not to be included within the statutory program, for giving notice of the completed grading of the land, and for allowing the landowner to contest the final calculations. Failure to comply with the January 15 notice deadline prevents the assessor from later imposing the compensating tax upon removal from forest land status. RCW 84.33.120(7). As the Counties note, the imposition of this compensating tax is an essential part of the statutory plan to encourage the continued existence of forest lands. We believe the provisions of RCW 84.33 reflect a strong legislative intent to incorporate the forest land taxation program into the January 1 assessment cycle. Midyear valuations are not authorized since the required procedures would have to be violated.

The landowners rely upon a portion of a property tax bulletin dated April 11, 1983, PTB 83–1, issued by the Department of Revenue, which stated:

> When a private owner acquires forest land from the state, a county, or other tax exempt organization, [and i]f such land is granted classified or designated status, the value to be used to calculate the current year's tax shall be the statutory forest land values. Also, the effective date for computing any future compensating taxes shall be the year in which such classified or designated status was approved.

The settled rule of this court is that a statutory interpre-

tation by an agency is not binding and will not be approved if inconsistent with the statute or its underlying policy. *Burlington Northern, Inc. v. Johnston,* 89 Wn.2d 321, 572 P.2d 1085 (1977); *Lee v. Jacobs,* 81 Wn.2d 937, 940, 506 P.2d 308 (1973); *see also Townsend v. Swank,* 404 U.S. 282, 286, 30 L. Ed. 2d 448, 92 S. Ct. 502 (1971); *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Comm'n,* 390 U.S. 261, 272, 19 L. Ed. 2d 1090, 88 S. Ct. 929 (1968). The bulletin appears to be directly contrary to the language and legislative intent of RCW 84.33 requiring compliance with the January 1 effective date for assessments and scheduled notice deadlines to the landowners. The bulletin is an informal newsletter with no official status and has no effect on the language and intent of the statute.

The landowners are also unable to claim any reliance or estoppel based upon the bulletin. The bulletin was issued after the transfer of the lands in three of the cases, the Cowlitz County, King County, and Burlington Northern v. Pierce County cases, and in the other two cases, involving Weyerhaeuser and Pierce County, Weyerhaeuser specifically requested the January 1 effective date in its letters to the County.

Effect of RCW 84.33 upon publicly owned land. The Counties further contend the procedures for effective implementation of RCW 84.33 can only apply to privately owned property and can only begin to be applied after the transfer to private ownership, making necessary a waiting period before the landowner could benefit from its valuation rates. The landowners contend the properties should have been classified or designated as forest land under RCW 84.33 while publicly owned.

■ The stated legislative purpose of the chapter is to modernize the "system for taxation of timber and forest lands". RCW 84.33.010. The statutory procedures for notice to the owner at the time of classification, and the compensating tax discouraging later removal from classification, can reasonably apply only to private owners. To public owners who would neither benefit from the favorable taxa-

tion rates nor risk the later compensatory tax, the provisions requiring notice, opportunity to respond, and ability to decline classification if desired, would be meaningless. Further, the statute specifically states land ceases to be eligible for classification upon sale or transfer to an ownership making the land exempt from ad valorem taxation. RCW 84.33.120(5)(b). This necessarily implies the property may be classified only when privately owned. Finally, the statute specifically refers to private property as the property affected by the statute. RCW 84.33.110(2) directs the Department of Natural Resources to "design and implement a program to determine which privately owned land is forest land as defined by RCW 84.33.100 . . . and to have such forest land graded . . ." *See also* RCW 84.33.114 (also referring to privately owned land). The taxation scheme created by RCW 84.33 is intended for application solely to private, taxpaying landowners. The statute provides no authority for classification or designation as forest land while publicly owned.

## RCW 84.40

The Counties argue the procedures set forth in RCW 84.40 regarding assessment of publicly owned lands and providing for taxation of the lands when transferred to private ownership do not require them to ignore the schedule of qualifying procedures under RCW 84.33. The landowners contend the statutes prohibit the Counties from assessing the lands while publicly owned and require them to apply the RCW 84.33 forest land valuation rates immediately upon transfer from public ownership.

RCW 84.40.350–.390. RCW 84.40.350 provides:

Real property, previously exempt from taxation, shall be assessed and taxed as provided in RCW 84.40.350 through 84.40.390 when transferred to private ownership by any exempt organization including the United States of America, the state or any political subdivision thereof by sale or exchange or . . . when the property otherwise loses its exempt status.

RCW 84.40.360 subjects the owner of the property to lia-

bility for a pro rata portion of the taxes for the year of the transfer. RCW 84.40.370 provides:

> The assessor shall list the property and assess it with reference to its value on the date the property lost its exempt status unless such property has been previously listed and assessed. He shall extend the taxes on the tax roll using the rate of percent applicable as if the property had been assessed in the previous year.

These provisions create an immediate tax liability for the private owner acquiring property from a public entity. The landowners contend the "value on the date the property lost its exempt status" should be interpreted to mean the forest land values under RCW 84.33. As discussed above, however, the RCW 84.33 taxation program provides no authority for creating an applicable value determination that could be applied immediately upon transfer midyear. The properties had instead been "previously listed and assessed" within the meaning of this statute, at their fair market values, so no midyear reassessment was required. The landowners dispute the validity of that assessment, based upon their reading of RCW 84.40.175.

RCW 84.40.175. The Counties argue they acted properly in assessing the property at its fair market value while publicly owned. The landowners argue the assessors have no authority to assess any value on property while it is publicly owned and consequently must reassess it at the time of transfer. The landowners base this argument on RCW 84.40.175, which provides:

> At the time of making the assessment of real property, the assessor shall enter each description of property exempt under the provisions of RCW 84.36.005 through 84.36.060, and value and list the same in the manner and subject to the same rule as he is required to assess all other property, designating in each case to whom such property belongs, and for what purpose used, to entitle it to exemption, and he shall require from every person claiming such exemption proof of the right to such exemption: *Provided,* That with respect to publicly owned property exempt from taxation under provisions of RCW 84.36.010, the assessor shall value only such

property as is leased to or occupied by a private person under an agreement allowing such person to occupy or use such property for a private purpose when a request for such valuation is received from the department of revenue for use in an audit of the taxable rent as provided for in RCW 82.29A.020(2)(b): *Provided further,* That this section shall not prohibit any assessor from valuing any public property leased to or occupied by a private person for private purposes.

The portion of this statute up to the first proviso was originally enacted in 1925. Laws of 1925, 1st Ex. Sess., ch. 130, § 9, p. 235. The two provisos were added in 1976. Laws of 1975, 2d Ex. Sess., ch. 61, § 15, p. 231. The Counties contend publicly owned properties, although exempt from taxation, are not exempt from assessment, and this statute requires assessment of public property. The landowners contend the provisos prohibit assessment of public property not leased to a private party. The Counties respond the provisos do not eliminate the duty under the original enactment to assess exempt property but merely underscore that duty with respect to public property leased to private persons.

The Counties' position is supported by an analysis of the legislative intent in enacting the provisos amending this statute. The provisos were part of a law establishing a "leasehold excise tax on the act or privilege of occupying or using publicly owned real or personal property through a leasehold interest". RCW 82.29A.030(1). The stated purpose of the legislation was to "provide for a leasehold excise tax to fairly compensate governmental units for services rendered to such lessees of publicly owned property." Laws of 1975, 2d Ex. Sess., ch. 61, § 1, p. 225. This court has stated the legislation was "specifically intended to permit the assessor to tax separately any improvements on leased publicly owned lands." *Duwamish Warehouse Co. v. Hoppe,* 102 Wn.2d 249, 254, 684 P.2d 703 (1984). Analyzing the above provisos in this context discloses no legislative intent to negate the original portion of the section or to reduce in any way the general duty to assess exempt prop-

erty. To interpret the provisos to prohibit assessment of exempt property would frustrate the purpose of the statute as a whole. *See Garvey v. St. Elizabeth Hosp.*, 103 Wn.2d 756, 759, 697 P.2d 248 (1985). We believe the rather awkward language of the first proviso, read in light of its legislative history, was intended to create a specific mandate to assess certain properties "when a request for such valuation is received from the department of revenue", without diminishing the general mandate to assess exempt property as set forth in the main body of the statute.

An earlier Washington opinion reached the same conclusion regarding this statute. *Johnson v. Spokane*, 19 Wn. App. 722, 577 P.2d 164 (1978) concerned the effectiveness of a petition to annex property to a city. The petition would be valid if it bore the signatures of owners of the necessary percentage of the "assessed valuation for general taxation". *Johnson*, at 726. At issue was whether the City of Spokane, which owned land included in the petition, could join the petition. Opponents had argued the provisos of RCW 84.40.175 prohibited the assessment of the land and its joinder in the petition. The court disagreed, stating:

> The addition of the proviso should not be construed so as to interfere with the original portion of the statute which requires the county assessor to enter a description of the tax exempt property, its value, and list the property as he does all other property.

*Johnson*, at 727.

The ultimate position of the landowners fails, however, regardless of their arguments under RCW 84.40.175. Whether the property was subject to assessment before the date of transfer has no effect upon our earlier conclusion that the RCW 84.33 forest land rates cannot be applied immediately upon transfer. RCW 84.40.350–.390 require some value to be assessed and taxed upon transfer to private ownership, and the RCW 84.33 rates cannot be applied, so the only remaining option for the assessor is to apply a fair market value assessment, whether that assessment is made as of the date of transfer or while the prop-

erty is still publicly owned. The fair market value assessment was applied in all the cases here.

Finally, the statutes before us represent a comprehensive effort by the Legislature to modernize the taxation of timber and forest lands in order to gain certain stated benefits. RCW 84.33.010. We think it extremely unlikely the Legislature would intend different commencement dates for the application of the forest land tax rate which depended only on whether immediately prior to the new classification the land had been held privately or publicly. Neither the statutes themselves nor the arguments of the landowners persuade us to the contrary.

We affirm the decision in Burlington Northern v. King County. We reverse the judgments in the Cowlitz County and Pierce County cases and remand for entry of summary judgments in favor of the Counties.

UTTER, BRACHTENBACH, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., and SKIMAS, J. Pro Tem., concur.