[No. 56505-8. En Banc. April 16, 1992.]

COWICHE CANYON CONSERVANCY, ET AL, *Appellants*, v.
BRUCE BOSLEY, ET AL, *Respondents*.

802

*Raymond L. Paolella*, for appellant Cowiche Canyon Conservancy, et al.

*Kenneth O. Eikenberry, Attorney General*, and *Allen T. Miller, Jr., Assistant*, for appellant State.

*Meyer, Fluegge & Tenney, P.S., Walter G. Meyer*, and *John A. Maxwell, Jr.*, for respondents.

*Wick Dufford* on behalf of Washington Environmental Council, amicus curiae for appellants.

BRACHTENBACH, J. — This action concerns alleged violations of the Shoreline Management Act of 1971 (SMA), RCW 90.58, by the removal, at defendant's request, of three railroad trestles which crossed Cowiche Creek. The private plaintiffs had no interest in the railroad trestles.

The Department of Ecology (Department) joined the suit as a plaintiff, with no investigation of the facts; the Department acted solely on a telephone report from the private plaintiffs' attorney and a telephone call to Yakima County.

Summary judgment in favor of plaintiffs was granted on the issue whether removal of the trestles was a substantial development within the meaning of the SMA, and the case went to trial on remaining SMA issues.

The trial court held that all plaintiffs lack standing to bring the action, that the SMA was not violated, and that RCW 90.58.140(1) and (2) are unconstitutional as applied to

defendant. The trial court awarded attorney fees to defendant.[1]

We conclude that no violation of the SMA occurred, and uphold the award of attorney fees to defendant pursuant to RCW 90.58.230. Defendant is awarded attorney fees on appeal.

The events leading to this suit are briefly recounted below, with further detail provided in connection with analysis of the issues.

In 1984 Burlington Northern Railroad (Burlington) abandoned its railroad line through the Cowiche Canyon, a few miles from Yakima. Plaintiff Cowiche Canyon Conservancy (Conservancy) is a nonprofit organization organized in 1985 which sought to create a 3-mile stretch of the abandoned railroad right of way through the canyon as a public hiking and nature trail. The 3-mile section of the right of way had 11 trestles which crossed the Cowiche Creek, which flows through the canyon. The Conservancy wanted to use the 11 trestles as part of the trail. The Conservancy commenced negotiations with Burlington to obtain rights to the right of way passing through the canyon.

Defendant, Bruce Lee Bosley, is a landowner in the canyon area. The abandoned railroad right of way passes near his house. The trestles were not located on defendant's land nor was his property adjacent to the property on which the trestles were located. Defendant opposed creation of a trail using the abandoned railroad right of way, reasoning that creation of the trail would result in members of the public trespassing on private property, increased vandalism, and littering, among other things. Defendant became actively involved in opposing the proposed trail by joining neighbors

---

[1]Bruce Bosley took the actions complained of by plaintiffs; he and his wife are defendants. For convenience we refer in the singular to "defendant".

opposing the trail and with quiet title actions in which reversionary rights to the abandoned right of way were asserted.

When the railroad was abandoned, Burlington arranged with a contractor for removal of the rails, ties, and several trestles along the right of way.

In April 1987, defendant contacted the contractor, and over a period of time had conversations with the contractor about removal of 3 of the 11 trestles which crossed the Cowiche Creek along the proposed nature trail. Defendant contacted the owners of the land through which the right of way containing these three trestles passed. He then advised the contractor that he had control of that land and that the owners did not object to removal of the trestles. The contractor dismantled the three trestles in late May or early June 1987.

In the spring of 1987 defendant constructed gates at each end of the 3-mile portion of the right of way constituting the proposed trail. The contractor, who believed he had control of the right of way while removing railroad ties and lines in the Cowiche Canyon location, did not object to the placement of the gates or signs by defendant. The contractor agreed that placement of the gates would protect his materials and equipment while he was performing work on the right of way.

Plaintiff Shields Bag and Printing Company is a for-profit corporation. In December 1987, Shields Bag and Printing Company purchased the land through which the 3-mile stretch of right of way passed, for use by the Conservancy. It is important to note that the trial court found that the land did not include the trestles or the right of way on which any trestles were located.

On January 4, 1988, the private plaintiffs (Cowiche Canyon Conservancy and Shields Bag and Printing Company) commenced this action, alleging, among other things, violations of the SMA. On the same date that the action was commenced, the private plaintiffs' attorney telephoned the

Department's shoreline enforcement coordinator and officer, Don Beery, who entered information on a "Shorelands Complaint Form". Beery recorded the complaint as follows: "adjacent property owner has hired contractor to burn abandoned rail brides [*sic*] to prevent railroad right-of-way from becoming a public trail system." Deposition of Beery; exhibit 1, at 1. The Department joined the action as a plaintiff, based upon this complaint and an affidavit from the contractor which stated that defendant told the contractor that he (defendant) had purchased the railroad right of way from some people in Idaho and that he wanted the contractor to remove some of the railroad bridges from the property defendant said he now owned.

The Department made no investigation of the facts before joining the suit.

In the amended complaint, plaintiffs alleged both common law and SMA claims. The parties filed motions for summary judgment. Plaintiffs' motion for partial summary judgment was granted, with the court ruling that removal of the trestles constituted a violation of the SMA, but leaving liability and causation issues for trial. Defendant's motion for summary judgment dismissal of the common law claims was granted on the basis that the private plaintiffs lacked standing to assert the claims.

A 3-day bench trial on the SMA claims followed. At the conclusion of the trial, the trial court (not the same as the court ruling on the summary judgment motions) entered findings and conclusions. Among its conclusions, the trial court held that all of the plaintiffs lacked standing to bring the action under the SMA, that placement of the gates did not constitute a substantial development within the meaning of the SMA, and that RCW 90.58.140(1) and (2) are unconstitutional as applied to defendant. The trial court awarded attorney fees to defendant alternatively pursuant to RCW 4.84.185 and RCW 90.58.230.

Plaintiffs sought direct review by this court, which was granted. Defendant cross-appealed.

We first address the question of plaintiffs' standing to bring this action.

### STANDING

The trial court held that neither the private plaintiffs nor the Department have standing to bring this action. We agree that the private parties lack standing.

■■ RCW 90.58.230 provides that private persons have the right to bring suit for damages on their own behalf and on behalf of other persons similarly situated. Here, the private plaintiffs owned no property adjacent to or even in the vicinity of Cowiche Creek at the time the trestles were removed and the gates were placed on the right of way.

The trial court found:

> At the time of the removal of the three railroad trestles by [the contractor] and the placement of the gates by defendant Bruce Bosley, neither Cowiche Canyon Conservancy nor Shields Bag and Printing had any right, title or interest to the trestles, the property upon which they were situated, or any adjacent property.

Finding of fact 19. This finding is unchallenged. It is therefore a verity on appeal. *Nearing v. Golden State Foods Corp.*, 114 Wn.2d 817, 818, 792 P.2d 500 (1990).

The private plaintiffs have belatedly tried to establish their right to bring suit pursuant to an alleged assignment of claims.

The trial court found that Burlington Northern Railroad owned the right of way from which the trestles were removed. A third party, the Clarks, owned the adjacent property. Finding of fact 24. The private plaintiffs challenge this finding, evidently to lend support to a claim that a valid assignment of claims was made to them by the Clarks. If the Clarks did not own the property, of course, such an assignment would obviously be of no import.

■ The trial court found that

> No assignment of a claim for damages to the trestles or any real property was ever made to Shields Bag and Printing Co. or to Cowiche Canyon Conservancy or to the State of Washington from Burlington Northern, Clarks, or any other potentially interested party.

Finding of fact 22. The private plaintiffs assign error to this finding. However, the private plaintiffs present no argument in their opening brief on any claimed assignment. (Indeed, the only mention of the alleged assignment in the opening brief is a statement of an issue relating to a claim of trespass, not an SMA action; the trespass issue is not addressed in the brief, either.) Accordingly, the assignment of error is waived. *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986).

No assignment of claims from any property owners, Burlington Northern Railroad or the Clarks was introduced at trial. Private plaintiffs claim, for the first time in their reply brief, that an assignment from the Clarks is in the Clerk's Papers and defendant should be estopped to deny its existence.

■ An issue raised and argued for the first time in a reply brief is too late to warrant consideration. *In re Marriage of Sacco*, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990). That the issue existed earlier is obvious from finding of fact 22.

■ In their opening brief the plaintiffs proffer three other grounds for standing based upon injury to asserted interests of the private plaintiffs themselves in an effort to establish standing to assert damages in their own behalf (for example, an "expectancy" of future ownership). Brief of Appellants (Cowiche Canyon Conservancy), at 39-41. In fact, the three grounds argued are not supported by any reference to the record nor by any citation of authority; we do not consider them. RAP 10.3(a)(5); *McKee v. American Home Prods. Corp.*, 113 Wn.2d 701, 705, 782 P.2d 1045 (1989).

Thus, the private plaintiffs fail to establish standing to assert damages on their own behalf. We uphold the trial court's conclusions that

> Cowiche Canyon Conservancy and Shields Bag and Printing were not damaged as a result of the removal of the three railroad trestles. Cowiche Canyon Conservancy and Shields Bag and Printing Co. were not damaged by construction of the gates.

Conclusion of law 7.

Plaintiffs Cowiche Canyon Conservancy and Shields Bag and Printing Co. have no standing to bring a claim for damages on their own behalf.

Conclusion of law 8.

■ The private plaintiffs also argue that they have standing to enforce the SMA as members of the public. In that they have no standing in their own right, they could only be acting on behalf of others. Plaintiffs may not maintain an action on behalf of others unless they comply with CR 23. *Department of Ecology v. Pacesetter Constr. Co.*, 89 Wn.2d 203, 214-15, 571 P.2d 196 (1977). In *Pacesetter*, the court held that the provision in RCW 90.58.230 that private persons may sue on behalf of themselves and others similarly situated is subject to the requirements of CR 23 relating to class actions. The private plaintiffs do not mention CR 23 in their briefs.

The trial court concluded:

Shields Bag and Printing Co. and Cowiche Canyon Conservancy failed to follow and satisfy the requirements of CR 23 and are precluded from bringing a claim for damages on behalf of others.

Conclusion of law 9.

We agree with the trial court's conclusions that plaintiffs lacked standing in their own right and, because they did not attempt to comply with CR 23, they may not pursue this action on behalf of others.

The trial court also held that the Department lacks standing. We note that in *Department of Ecology v. Pacesetter Constr. Co., supra*, the Department of Ecology joined in an action brought by a party claiming damages from a violation of the SMA. In most cases, however, the local government will, and should, determine in the first instance whether to grant or deny a permit, and the Department should ordinarily not find it necessary to join a suit under circumstances like those in this case.

We perceive no reason for the Department to have become involved in the present case, but do not foreclose the possibility that the Department may have standing in some suits originally brought by private parties.

We will assume, for purposes of our decision, that the Department has standing.

We next consider defendant's cross appeal, wherein it is argued that the trestle removal did not violate the SMA.

TRESTLE REMOVAL

In his cross appeal, defendant challenges the propriety of the court's order granting partial summary judgment in favor of the plaintiffs on the issue of whether removal of the trestles constituted a violation of the SMA.

The court held that the demolition and removal of the trestles constituted a substantial development under the SMA, and that the demolition and removal of the trestles without a permit constituted a violation of the act. The question whether defendant was liable for damages resulting from that violation was left for trial. In the subsequent trial, therefore, the question whether removal of the trestles constituted a substantial development was not at issue, having been resolved on summary judgment. CR 56(d).

In reviewing a grant of summary judgment, the appellate court engages in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). Summary judgment is appropriate if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c); *Marincovich*, at 274. Facts and all reasonable inferences therefrom are considered in the light most favorable to the nonmoving party, and summary judgment should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Marincovich*, at 274; *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Glesener v. Balholm*, 50 Wn. App. 1, 7, 747 P.2d 475 (1987).

The burden is on the moving party to demonstrate there is no issue as to a material fact, and the moving party is held to a strict standard. *Atherton Condominium Apartment-Owners Ass'n v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

Defendant argues that summary judgment was improper because as a matter of law the removal of the trestles did not constitute a "development" under the SMA. We agree that, as a matter of law, removal of the trestles did not constitute a "development" within the meaning of the SMA, and partial summary judgment was improperly granted. We therefore do not address defendant's additional arguments that there remain material issues of fact as to whether removal of the trestles constituted a "substantial development" under the SMA.

■ Cowiche Creek is within the jurisdiction of the SMA. *See* WAC 173-18-430(5) (designating creek as shoreline of state). Under the SMA, no substantial development shall be undertaken on shorelines of the state without first obtaining a permit from the local government having administrative jurisdiction under RCW 90.58. RCW 90.58.140(2); *see* RCW 90.58.140(3).

"Development" is defined for purposes of the SMA as

a use consisting of the construction or exterior alteration of structures; dredging; drilling; dumping; filling; removal of any sand, gravel, or minerals; bulkheading; driving of piling; placing of obstructions; or any project of a permanent or temporary nature which interferes with the normal public use of the surface of the waters overlying lands subject to this chapter at any state of water level[.]

RCW 90.58.030(3)(d). A "substantial development" is defined as

any development of which the total cost or fair market value exceeds two thousand five hundred dollars, or any development which materially interferes with the normal public use of the water or shorelines of the state . . .[.]

RCW 90.58.030(3)(e).

Under the statute no "substantial development" exists if there is no "development" within the meaning of RCW 90.58.030(3)(d), because for there to be a "substantial development", there must first be a "development" (" 'substantial development' shall mean any *development* . . ."). (Italics ours.) RCW 90.58.030(3)(e). *See Weyerhaeuser Co. v. King Cy.*, 91 Wn.2d 721, 726, 592 P.2d 1108 (1979).

The Department claims that the trestle removal was a development because it was an "exterior alteration of a structure" within the meaning of RCW 90.58.030(3)(d).

■ ■ In construing statutes, the primary objective is to ascertain the intent of the Legislature. *Martin v. Meier*, 111 Wn.2d 471, 479, 760 P.2d 925 (1988). Clear language will be given effect. *People's Org. for Wash. Energy Resources v. Utilities & Transp. Comm'n*, 104 Wn.2d 798, 825, 711 P.2d 319 (1985). If a term is defined in a statute, that definition is used. Absent a statutory definition, the term is generally accorded its plain and ordinary meaning unless a contrary legislative intent appears. *Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 479-80, 745 P.2d 1295 (1987).

The term "exterior alteration of structures" is not defined in the statute. The ordinary meaning of the words is contrary to the Department's position. "Alteration" is "the act or action of altering". *Webster's Third New International Dictionary* 63 (1981). "Alter" means "to cause to become different in some particular characteristic . . . without changing into something else". *Webster's Third New International Dictionary* 63 (1981).

■ Total removal, *i.e.*, the equivalent of complete destruction, is simply not the alteration of the exterior of a structure — nothing at all remains. If the Legislature had intended "removal" or "destruction" to fall within the meaning of "development", it could have said so.

In advancing its implausible argument that complete "removal" equals "alteration", the Department fails to analyze the words of the statute. The Department simply makes assertions and characterizations which lack reasoning or analysis.

■ ■ The Department argues, however, that its interpretation of the statute is entitled to great weight in determining legislative intent, citing *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157, 161 (1975). The rule relied upon at the cited page is that when a statute is ambiguous, the construction placed upon the rule by the administrative agency charged with its

administration and enforcement should be given great weight in determining legislative intent.

The specific rule set out in *Hama Hama* applies when the statutory language is ambiguous. Simply because the words of a statute are not defined in the statute does not make the statute ambiguous. If that were true, the majority of statutes would suffer from ambiguity. Such is not the case. The words "alteration" and "alter" have well-accepted, ordinary meanings. The problem thus is not deciding what the statute means, but is instead a question of whether the particular act complained of, removal of the trestles, falls within the statutory terms "exterior alteration of structures".

▮ The Department, however, relies upon trial testimony for the proposition that the agency has interpreted "development" and "substantial development" to include bridge removal. The first problem with reliance on trial testimony is that the meaning of a statute's terms is a question of law; the question is not one amenable to resolution based upon trial testimony. *See, e.g., State v. McCormack*, 117 Wn.2d 141, 812 P.2d 483 (1991) (interpretation of statute is question of law). The agency either has an agency interpretation or it does not.

Second, the question whether the bridge removal was a "development" or a "substantial development" was not at issue at trial (and this is why testimony relied upon by the Department was ruled inadmissible). Verbatim Report of Proceedings (June 27, 1989), at 53-54. The issue was resolved by a different judge in the earlier summary judgment proceedings. Third, the testimony relied upon by the Department is, in any event, merely a conclusory statement that the trestle removal was a "substantial development".

The record tends to show that, to the contrary of the Department's now asserted position, the agency had no agency interpretation of the statute which would include the trestle removal within the definition of "development" (and therefore none bringing the trestle removal within the definition of "substantial development"). The Department

took no action regarding the removal of other bridges from the same railroad right of way, even though no permits were obtained for their removal. Deposition of Mack, at 12. In fact, the Department's enforcement coordinator was aware of only one or two instances in 14 years where a permit was processed for bridge removal. Deposition of Beery, at 4-6.

If an agency is asserting that its interpretation of an ambiguous statute is entitled to great weight it is incumbent on that agency to show that it has adopted and applied such interpretation as a matter of agency policy. It need not be by formal adoption equivalent to an agency rule, but it must represent a policy decision by the person or persons responsible. Nothing here establishes such an agency policy, and nothing shows any uniformly applied interpretation. The evidence establishes that the application and "interpretation" here was nothing more than an isolated action by the Department. Therefore, even if we were to assume for the sake of argument that the statute was ambiguous, and thus the *Hama Hama* analysis applicable, the Department has not established an agency interpretation entitled to great weight. Instead, it attempts to bootstrap a legal argument into the place of agency interpretation.

Moreover, an administrative determination will not be accorded deference if the agency's interpretation conflicts with the relevant statute. *Department of Labor & Indus. v. Landon*, 117 Wn.2d 122, 127, 814 P.2d 626 (1991); *Weyerhaeuser Co. v. Cowlitz Cy.*, 109 Wn.2d 363, 371-72, 745 P.2d 488 (1987).

In this case, there is no basis for giving deference to the assertion that removal of the trestles constituted a development.

As a matter of law removal of the railroad trestles was not a "development" within the meaning of RCW 90.58-.030(3)(d), and thus was not a "substantial development" within the meaning of RCW 90.58.030(3)(e). The court erred in granting partial summary judgment in plaintiffs' favor.

■ Finally, the Department confusingly argues that removal of the trestles otherwise violated the SMA. The clearest argument is that regardless of whether a permit was required, defendant's act violated RCW 90.58.140(1), which provides that "[a] development shall not be undertaken on the shorelines of the state unless it is consistent with the policy of this chapter . . .." This section does not require that a permit be obtained before a development is undertaken.

The claim here is that the removal of the trestles was inconsistent with the policy of the SMA. However, in order to fall within RCW 90.58.140(1), the action must constitute a "development" within the meaning of RCW 90.58-.030(3)(d). *See Clam Shacks of Am., Inc. v. Skagit Cy.*, 109 Wn.2d 91, 94-95, 743 P.2d 265 (1987) (in the context of RCW 90.58.140, "development" and "substantial development" are terms of art by virtue of the definitions in RCW 90.58.030(3)(d) and (e)).

As explained above, the trestle removal did not constitute a "development" within the meaning of the statute. Removal of the trestles did not violate the SMA pursuant to RCW 90.58.140(1).

The Department also argues that there has been material interference with public use of the Cowiche Creek shoreline, and a violation of the SMA therefore occurred. Again, the difficulty is the Department's lack of clarity in addressing the express statutory provisions. "Public use" of the shoreline is a concept embodied in both the definition of "development" and the definition of "substantial development". Looking first at "development", RCW 90.58.030(3)(d) provides that a "use consisting of . . . any project . . . which interferes with the normal public use of the surface of the waters overlying lands subject to [RCW 90.58]" is a development.

Nothing in the record or in the arguments advanced by the Department supports the notion that public use of the *surface* of the waters of Cowiche Creek was affected by the

trestle removal. Therefore, the "public use" concept in RCW 90.58.030(3)(d) is inapplicable.

The definition of "substantial development" also refers to "public use" of the shoreline. RCW 90.58.030(3)(e) provides in part that "any development . . . which materially interferes with the normal public use of the water or shorelines of the state" is a "substantial development". As exhaustively discussed above, there is no "substantial development" without there being first a "development" and the trestle removal, as a matter of law, does not constitute a development.

The question of "public use" of the water or shoreline of Cowiche Creek under RCW 90.58.030(3)(e) is simply irrelevant to the question whether the trestle removal violated the SMA in the absence of any "development" within the meaning of RCW 90.58.030(3)(d).

The question of "public use" is relevant, however, to the question whether defendant's placement of the gates constituted a violation of the SMA. As explained below, the Department's claim of interference with normal public use is without merit.

### PLACEMENT OF THE GATES

The other action claimed to violate the SMA is defendant's placement of gates at each end of the 3-mile stretch of right of way involved in this case. This question was litigated at trial, with the trial court holding that placement of the gates did not violate the SMA.

The State maintains that installation of the locked gates at the ends of the canyon constituted a "placing of obstructions" and therefore was a development within the meaning of RCW 90.58.030(3)(d). The State further argues that installation of the gates materially interfered with the normal public use of the Cowiche Creek shoreline, and therefore was a "substantial development" within the meaning of RCW 90.58.030(3)(e).

It is, at the least, debatable whether the placing of the gates was a "placing of obstructions" in relation to the

shoreline and Cowiche Creek, as opposed to the gates' relation to the right of way itself. We will assume, without deciding, that placement of the gates was a "development". The questions then are (a) whether placement of the gates constituted a "substantial development" requiring a substantial development permit, or (b) whether placement of the gates violated the SMA pursuant to RCW 90.58.140(1).

As to the first of these questions, whether placement of the gates constituted a substantial development: The argument is that the placement of the gates was a development which was a "substantial development" because it "materially interfere[d] with the normal public use" of Cowiche Creek and the shoreline. RCW 90.58.030(3)(e).

The trial court found that the removal contractor believed he had control of the right of way and did not object to erection of the gates. Finding of fact 15. No error is assigned to this finding. The trial court held that the gates did not interfere with normal public access and therefore did not require a substantial development permit. We agree.

It is obvious from the exhibits that one could simply walk around the gates and proceed on the right of way. Even if access on the right of way was required to preserve any "normal public use" of the water and shoreline of Cowiche Creek, such access was simply not barred by placement of the gates. There is absolutely no merit to the Department's claim that placement of the gates materially interfered with any normal public access.

This would normally end the inquiry. However, the Department's argument is so untenable for another reason that we go further and explain the utter lack of a viable case on the Department's part.

In order to fall within that part of RCW 90.58.030(3)(e) which defines as a substantial development a "development which materially interferes with the normal public use of the water or shorelines of the state", it is plain that normal public use must be established.

The trial court found that

> A few members of the public from time to time walked on the railroad right-of-way through the Cowiche Canyon but any such usage did not result in the right-of-way being a means of public access to the canyon or the shorelines of the state of Washington.

Finding of fact 21. We note that the trial court further found that "[t]here was no damage to the shorelines or any public property." Finding of fact 26. The Department does not assign error to the latter finding.

■ Findings of fact supported by substantial evidence are verities on appeal. *Schmidt v. Cornerstone Invs., Inc.,* 115 Wn.2d 148, 169, 795 P.2d 1143 (1990). "Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." *Robinson v. Safeway Stores, Inc.,* 113 Wn.2d 154, 157, 776 P.2d 676 (1989) (quoting *Holland v. Boeing Co.,* 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978)).

■ The Department does not mention the findings of fact in its argument, and does not argue that they are not supported by substantial evidence. Rather, the Department asserts that "the public, for years, had used the right of way for access to the unique riparian shoreline of Cowiche Creek." Brief of Appellant (Department), at 3, 9, 14. In support of its statements, the Department cites three sources of evidence. First, it cites an entire 49-page deposition without reference to where relevant testimony might be found. It is not the function of the appellate court to search through an entire deposition to locate relevant testimony. RAP 10.3(a). Second is a reference to a map, exhibit 14, which discloses nothing about public access. Finally, the Department cites 36 pages of testimony — the entire testimony of two witnesses. Such shotgun references to the record are of little assistance and ill serve a party.

Nonetheless, we have reviewed the cited testimony; it does not support the assertion that there was satisfactory proof of access. The weakness of the Department's claim is

shown by the testimony of the first witness who testified as to her personal use:

Q: How did you become familiar with those areas?
A: Well, several years ago I used to walk through the canyon about once a year with a friend, like through it. In the last few years, I've been there several times.

Verbatim Report of Proceedings, at 133.

The other witness whose testimony is cited is president of the Conservancy. He had been on the trestles "perhaps five or six" times. Verbatim Report of Proceedings, at 156. On the issue of public use, he testified only as follows:

Q: Do you know if members of the public had used those trestles?
A: Yes, they have.
Q: Do you know what they used them for?
A: Used them for years to gain entry into Cowiche Canyon and for passage over the creek.

Verbatim Report of Proceedings, at 156. The witness testified that use of the area by the public had been "affected" by destruction of the trestles. Verbatim Report of Proceedings, at 156.

However, the Department's own enforcement coordinator testified that the absence of the trestles did not prevent one from getting to the stream "at all". Deposition of Beery, at 39.

Given the meager, conclusory testimony, utterly lacking in identification of time or place, the trial court was justified in finding that plaintiffs failed to prove there was any normal public access at all to the canyon or the shorelines.

Finally, the Department never discusses the fact that the gates were on private property which Burlington Northern had posted against trespassing.

In summary, the paltry showing of "public use" relied upon by the Department is plainly inadequate to show that the right of way was a route of normal public access to the shoreline. The placement of the gates therefore did not constitute a substantial development within the meaning of RCW 90.58.030(3)(e).

The remaining question, insofar as the gates are concerned, is whether a violation of RCW 90.58.140(1) resulted from placement of the gates. As noted above, under this statute, even if not a "substantial development", a "development" shall not be undertaken on the shorelines of the state if to do so would violate the policies of RCW 90.58. *See Hunt v. Anderson*, 30 Wn. App. 437, 439, 635 P.2d 156 (1981).

The policy of the SMA is

to provide for the management of the shorelines of the state by planning for and fostering all reasonable and appropriate uses. This policy is designed to insure the development of these shorelines in a manner which, while allowing for limited reduction of rights of the public in the navigable waters, will promote and enhance the public interest. This policy contemplates protecting against adverse effects to the public health, the land and its vegetation and wildlife, and the waters of the state and their aquatic life, while protecting generally public rights of navigation and corollary rights incidental thereto.

. . . .

In the implementation of this policy the public's opportunity to enjoy the physical and aesthetic qualities of natural shorelines of the state shall be preserved to the greatest extent feasible consistent with the overall best interest of the state and the people generally.

RCW 90.58.020.

The SMA emphasizes the need for a

planned, rational, and concerted effort, jointly performed by federal, state, and local governments, to prevent the inherent harm in an uncoordinated and piecemeal development of the state's shorelines.

RCW 90.58.020.

Coordinated planning among levels of government

is necessary in order to protect the public interest associated with the shorelines of the state while, at the same time, recognizing and protecting private property rights consistent with the public interest.

RCW 90.58.020.

These policies were not violated here. As noted, one could simply walk around the gates, if one wanted to trespass in the face of "no trespass" signs. There was testimony at trial that there was access to the shoreline independent of the

right of way. The trial court found that there was no damage to the shorelines or to any public property — the Department does not challenge this finding. Unquestionably, the policies of the SMA were not violated.

No violation of the SMA under RCW 90.58.140(1) resulted from placement of the gates.

Lastly on this issue, we note that while the Department's claims advanced here are meritless, the Department's conduct in pursuing this action cannot diminish the importance of the policies of the SMA.

In light of our disposition of the issues discussed above, we do not reach the trial court's holding that RCW 90.58-.140(1) and (2) are unconstitutional as applied.

## ATTORNEY FEES

The trial court awarded attorney fees to defendant pursuant to RCW 90.58.230, and, alternatively, pursuant to RCW 4.84.185. We affirm the award under RCW 90.58.230.

RCW 90.58.230 provides for suits for damages by the Attorney General or local government attorney and private persons, as explained above, and for restoration of areas affected by a violation. The statute further provides:

> In addition to such relief, including money damages, the court in its discretion may award attorney's fees and costs of the suit to the prevailing party.

RCW 90.58.230.

The trial court reasoned that the statute is not clear, but found compelling the reference to "prevailing party". The court gave that term the meaning it usually has. The prevailing party is the party in whose favor judgment is entered. *Andersen v. Gold Seal Vineyards, Inc.*, 81 Wn.2d 863, 865, 505 P.2d 790 (1973). Thus, the trial court concluded that a prevailing defendant could be awarded fees.

Plaintiffs contend, however, that the phrase at the beginning of the last sentence of the statute, "[i]n addition to such relief" (which could only be awarded to a plaintiff) means that only a successful plaintiff is entitled to an award of attorney fees and costs. Plaintiffs' view is sup-

ported by *Ritchie v. Markley*, 23 Wn. App. 569, 597 P.2d 449 (1979), where the court held that by its terms RCW 90.58.230 "allows attorney's fees merely as an incidental and discretionary part of the damages assessable against a defendant found to have violated [the] SMA." *Ritchie*, at 576. The court stated that the statute does not give a court discretion to award fees to a defendant who has successfully resisted an effort to obtain an injunction. *Ritchie*, at 576.

We agree with the trial court that the statute is not a model of clarity. However, if the Legislature had intended an award of fees only to a prevailing plaintiff, the reference to "prevailing party" need not be in the statute at all. The term would be superfluous and meaningless. *See PUD 1 v. Public Empl. Relations Comm'n*, 110 Wn.2d 114, 118, 750 P.2d 1240 (1988).

We accord the term its usual and accepted meaning and hold that attorney fees may be awarded under the statute to a prevailing defendant. We therefore affirm the trial court's award of attorney fees to defendant. *Ritchie v. Markley, supra,* is overruled insofar as it holds that only a prevailing plaintiff may be awarded attorney fees under the statute.

Our review of the trial court's award of attorney fees could be concluded at this point. However, participation in this action by the Department has been appalling, including much of its briefing. The trial court concluded the action was frivolous. Defendant has argued that CR 11 provides an alternate basis for the attorney fee award. The facts surrounding the Department's joining this suit explain why issues concerning RCW 4.84.185 and CR 11 have been raised.

As noted above, the Department was contacted by the private plaintiffs' counsel on the day this suit was commenced. Don Beery, the Department's shoreline enforcement coordinator and officer, filled out a shorelands complaint form.

In the usual course of action, Yakima County would have been the entity to undertake action for enforcement of the

SMA. RCW 90.58.050, .140(3). The Department, however, made no contact with the County except to inquire whether a substantial development permit had been applied for. The Department made no request to the County to initiate action or investigate the facts.

Beery testified that before filing a lawsuit for failure to obtain a permit, the State would usually check with the local government to learn whether the local government thinks a permit is necessary; however, he did not ask in this case. Deposition of Beery, at 18-19. There was never any attempt to obtain from Yakima County its determination as to whether a substantial development permit was required for removal of the trestles. The Department never asked.

The Department's program manager for shorelines was D. Rodney Mack. His function was management of the State's responsibility under the SMA, including enforcement. It was Mack's decision to enter this case as a plaintiff, evidently based only upon information obtained by Beery through two telephone calls. He made this decision without knowing whether the creek had been disturbed in any way, without knowing whether the public walked over the stream, without knowing whether the public used the railroad right of way, without knowing of any monetary loss to the State of Washington, without knowledge of ownership of the lands involved, and without any idea of who was responsible for a permit, if one was required.

No one from the Department even saw the area involved until shortly before trial. There was no investigation of how any public access which might exist would be impacted by removal of the trestles.

Even at the time of trial the Department had not decided who was responsible for obtaining the permit the Department claims is required.

All the Department knew, when it entered this suit, was that an adjacent property owner had the bridges burned

(they were not), that Yakima County, the entity with full authority and responsibility to act on a permit, had taken no action, and that defendant had represented that he owned the right of way. At the time the Department joined the action, it knew nothing of the placement of the gates which it later relied upon heavily as constituting a violation ·of the SMA.

At the time that it entered this suit, the Department had made no reasonable inquiry of the facts, and had no basis for concluding its claims were well grounded in fact. Nonetheless it brought the resources of the State to bear on defendant, with extensive and expensive discovery which continued in the face of repeated warnings from defense counsel that its action was not well founded and that defendant would seek attorney fees as were ultimately awarded by the trial court.

The trial court did not impose sanctions pursuant to CR 11. The Department's conduct here was perilous; but we do not decide whether CR 11 sanctions would be upheld because the trial court did not invoke the rule. The Department would be wise to consider its conduct in light of the rule, however.

■ Defendant requests attorney fees on appeal. Attorney fees on appeal are awardable in the court's discretion. *See Sarvis v. Land Resources, Inc.*, 62 Wn. App. 888, 815 P.2d 840 (1991) (appellate court has inherent jurisdiction to award attorney fees on appeal if statute allows attorney fees at trial); *cf. Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 170, 795 P.2d 1143 (1990) (where statute in Consumer Protection Act allows recovery for attorney fees at trial, attorney fees on appeal recoverable). We award defendant reasonable attorney fees on appeal. Defendant must comply with RAP 18.1. The commissioner shall determine the amount of the award pursuant to RAP 18.1(f).

Defendant's motion to strike an appendix to the Cowiche Canyon Conservancy's brief is denied.

The trial court is affirmed.

DORE, C.J., and UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

Reconsideration denied June 10, 1992.