IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80025-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY DWAYNE BROOKS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Jeffrey Brooks challenges his convictions for second degree possession of a firearm and possession of heroin with intent to deliver, arguing that the police officer's affidavit was insufficient to support the trial court's finding of probable cause to issue a search warrant. Because the officer's affidavit provided sufficient facts for a reasonable person to conclude that Brooks was involved in criminal activity, the trial court did not abuse its discretion in issuing a search warrant.

Therefore, we affirm.

FACTS

In April 2016, a confidential informant told Tacoma Police Officer Shawn Mallot that a heroin dealer known as "Fat Head" was selling heroin in King and Pierce counties. "Fat Head" was later identified as Jeffrey Brooks.

The informant described Brooks as a "black male in his late 40s or 50s with longer hair usually worn in a ponytail" who often drove a dark blue minivan.[1] The informant also told Officer Mallot that a Cadillac "belonged" to Brooks.[2]

A few weeks later, the informant agreed to conduct a controlled buy at Brooks's residence. When the informant arrived at Brooks's residence, another officer watched as a male matching Brooks's description opened the door and let the informant inside. The informant returned with heroin she purchased from Brooks.

On April 20, the informant agreed to conduct a second controlled buy from Brooks. Officers watched as Brooks left his residence and drove in his Cadillac to the "deal location."[3] The informant entered the Cadillac for a "period of time" and then exited the vehicle.[4] The informant did not return with heroin.[5] On April 25, an

---

[1] Clerk's Papers (CP) at 140.

[2] CP at 140.

[3] CP at 140.

[4] CP at 141.

[5] We note that at trial Officer Mallot clarified that 0.7 grams of heroin was obtained by the informant at the second controlled buy. Report of Proceedings (RP) (Jan. 29, 2019) at 788-89. And the court entered finding of fact 11 on the State's motion to admit prior bad acts of previous controlled buys at trial: "The confidential informant again obtained 0.7 grams of heroin [at the second controlled buy]." CP at 91. On the suppression motion, the defense stated that the affidavit failed to indicate any drugs had been obtained in the second controlled buy. RP (Nov. 26, 2018) at 7-8. In response, the trial court noted that likely a sentence had been left out of the affidavit, but agreed with the defense that the court could only consider facts contained in the affidavit and did not rely on any drugs having been obtained in the second controlled buy. RP (Nov. 26, 2018) at 13-14. Consistent with those comments, the court's findings of fact on the CrR 3.6 motion to suppress acknowledge that "[r]egarding the second controlled buy, the affidavit

informant from another agency who had also bought drugs from "Fat Head" was shown a picture of Brooks and identified him as "Fat Head."

On April 28, the trial court issued a search warrant authorizing the search of Brooks's residence, his minivan, and his Cadillac. On May 4, officers executed the search warrant. The officers found heroin in Brooks's pocket, heroin, methamphetamine, and a loaded handgun in his residence, and cocaine and drug paraphernalia in his Cadillac.

Brooks was charged with second degree unlawful possession of a firearm, possession of heroin with intent to deliver, and possession of cocaine with intent to deliver. At a CrR 3.6 hearing, Brooks argued that the search warrant was defective because it was not supported by probable cause and that the seized evidence should be suppressed. The court denied the motion to suppress and entered findings of fact and conclusions of law.

On January 2, 2019, a jury found Brooks guilty of second degree unlawful possession of a firearm and possession of heroin with intent to deliver.

Brooks appeals.

<u>ANALYSIS</u>

Brooks argues that the trial court erred in denying his motion to suppress because the search warrant was not supported by probable cause. The existence

---

never states that officers received purchased drugs back from the confidential informant." CP at 25.

of probable cause is a legal question reviewed de novo.[6]  He has not assigned

error to the trial court's findings of fact, and they are verities on appeal.[7]

Article I, section 7 of the Washington Constitution requires that a "'search

warrant be issued upon a determination of probable cause based upon "facts and

circumstances sufficient to establish a reasonable inference" that criminal activity

is occurring or that contraband exists at a certain location.'"[8]  "The affidavit in

support of a search warrant must be based on more than suspicion or mere

personal belief that evidence of the crime will be found on the premises

searched."[9]

Brooks challenges conclusion of law 4, that "[t]he warrant was supported by

probable cause."[10]

The trial court found that probable cause existed to issue a search warrant

based on Officer Mallot's affidavit.  The affidavit provides that a reliable

confidential informant told Officer Mallot that Brooks was dealing heroin and that

the informant agreed to participate in two controlled buys.  The affidavit states the

first controlled buy occurred at Brooks's residence, officers watched as a man

---

[6] State v. Chamberlin, 161 Wn.2d 30, 40, 162 P.3d 389 (2007) (citing In re Det. of Petersen, 145 Wn.2d 789, 799, 42 P.3d 952 (2002)).

[7] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

[8] State v. Vickers, 148 Wn.2d 91, 108, 59 P.3d 58 (2002) (quoting State v. Thein, 138 Wn.2d 133, 140, 977 P.2d 582 (1999)).

[9] Id.

[10] CP at 25.

matching the informant's description of Brooks answered the door, and the informant returned with heroin.  The affidavit also states that the second controlled buy occurred at a predetermined, agreed-upon location and that officers watched Brooks leave his residence and drive in his Cadillac to the location.  And the court found that the informant was "sufficiently credible" and that heroin was obtained from the first controlled buy.[11]

Brooks contends that Officer Mallot's affidavit was insufficient to establish probable cause because it was based on stale information.  A "magistrate cannot determine whether observations recited in the affidavit are stale unless the magistrate knows the date of those observations."[12]  But "[a]n affidavit lacking the timing of the necessary observations might still be sufficient if the magistrate can infer recency from other facts and circumstances in the affidavit."[13]  And "[c]ommon sense is the test for staleness of information in a search warrant affidavit."[14]

Brooks relies on State v. Higby[15] to suggest that affidavits must "recite specific data as to the times, places, and magnitude of previous criminal activity."[16] Higby is distinguishable.

---

[11] CP at 26.

[12] State v. Lyons, 174 Wn.2d 354, 361, 275 P.3d 314 (2012).

[13] Id.

[14] State v. Maddox, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004).

[15] 26 Wn. App. 457, 459-62, 613 P.2d 1192 (1980).

[16] Appellant's Br. at 22-24.

In Higby, the officers arrested the driver and the passenger of a vehicle for possession of marijuana and hashish.[17]  The officer's affidavit stated that the passenger told the officers that he purchased marijuana from Higby's residence two weeks earlier.[18]  The officer also recalled that six months earlier, a different informant told him that he or she had observed "the packaging and sale" of marijuana at Higby's residence.[19]  The appellate court held that "[a] single observation of possible marijuana activity 6 months in the past combined with one small marijuana sale 2 weeks in the past and observations of marginally suspicious activity . . . is insufficient to establish a reasonable belief that marijuana will be found on the premises at the time of the search."[20]  The appellate court acknowledged "an increasing concern for the necessity that affidavits recite specific data as to times, places and magnitude of previous criminal activity."[21]

But here, Officer Mallot's affidavit states "specific data" about Brooks's previous criminal activity.  The April 28 affidavit states that the first controlled buy occurred in mid-April at Brooks's residence and heroin was obtained.  The affidavit also states that the second controlled buy occurred on April 20 and that the second informant identified Brooks as "Fat Head" on April 25.  In this context, the reference to the first controlled buy in "mid-April" is not deficient.  Viewed with

---

[17] Higby, 26 Wn. App. at 460.

[18] Id.

[19] Id.

[20] Id. at 462-63.

[21] Id. at 463.

common sense, all of the information provided in Officer Mallot's affidavit supports an inference of recency; the information was not stale.[22]

Because a reasonable person could conclude that Brooks was recently dealing heroin from the facts described in Officer Mallot's affidavit, probable cause existed to issue a search warrant. Brooks fails to establish the trial court erred.

Therefore, we affirm.

_____

WE CONCUR:

_____          _____

---

[22] Brooks also challenges conclusion of law 3, that "[t]he nonsuccess of the second controlled buy does not erase the validity and success of the first controlled buy; it is neutral or indeed adds to the credibility of the law enforcement officer's behavior." CP at 25. He fails to provide any authority in support of his assertion. To the extent Brooks also challenges the trial court's credibility finding, reviewing courts defer to the factfinder's credibility determinations. State v. Living Essentials, LLC, 8 Wn. App. 2d 1, 14, 436 P.3d 857 (2019) (citing Weyerhaeuser v. Tacoma-Pierce County Health Dep't, 123 Wn. App. 59, 65, 96 P.3d 460 (2004)), review denied, 193 Wn.2d 1040, 449 P.3d 658 (2019), cert. denied, 141 S. Ct. 234, 208 L. Ed. 2d 14 (2020).