# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51728-1-II |
| Respondent, | |
| v. | |
| JESSICA ANN DENYS, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Jessica Ann Denys appeals the trial court's denial of her request for a first-time offender sentencing waiver[1] following her guilty plea convictions for vehicular homicide with disregard for the safety of others and bail jumping and from the trial court's denial of her motion for reconsideration.[2] She argues that the trial court (1) erroneously assumed that the first-time offender waiver was not available for the vehicular homicide with disregard for the safety of others conviction and (2) abused its discretion in denying the waiver because it placed undue weight on the victim Crystal Allmendinger's family's and friend's statements, did not consider the benefit of allowing her to remain at home with her minor children, and failed to act in a manner that is

---

[1] RCW 9.94A.650.

[2] It is unclear why the trial court entertained a "motion to reconsider" a criminal sentence. A defendant unhappy with a sentence may either appeal the sentence or make a motion for relief from judgment and order pursuant to CrR 7.8.

consistent with the purposes of the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW.[3]

Because the court was aware that it had the authority to grant a first-time offender waiver and

meaningfully considered Denys's request for the waiver, we affirm.

FACTS

I. INCIDENT AND GUILTY PLEA

On October 26, 2014, Denys was involved in a motor vehicle accident that resulted in

Crystal's death. At the time of the accident, Denys was driving a vehicle that she knew had

"faulty" steering. Clerk's Papers (CP) at 177. The accident was caused by Denys's vehicle veering

to the side and striking Crystal's vehicle.

Denys, who had no prior criminal history, entered a plea to vehicular homicide by operating

a motor vehicle with disregard for the safety of others and to bail jumping. In her amended guilty

plea statement, Denys stated,

> On October 26, 2014, in Mason County, [Washington], I operated a motor vehicle
> with disregard for the safety of others. The steering was faulty. I continued to drive
> it, and it veered to the side, and struck a vehicle driven by Crystal Allmen[d]inger,
> killing her.

*Id*.

The amended statement of defendant on plea of guilty acknowledged that the trial court

could sentence Denys as a first-time offender instead of imposing a standard range sentence if she

---

[3] Denys also suggests that the trial court erred when it based its decision on the fact that the waiver would not be proportionate to the criminal act "without providing any connection to the case at bar." Appellant's Br. at 3; Appellant's Reply Br. at 4. She further suggests that the trial court erred when it considered whether she had issues that could be addressed while in custody. But Denys presents no argument or authority supporting these assertions, so we do not address them. RAP 10.3(a)(6).

qualified as a first-time offender. The court found a factual basis for the plea and accepted the guilty plea to vehicular homicide with disregard for the safety of others (RCW 46.61.520(1)(c)) and bail jumping.

## II. Sentencing Hearing

### A. Crystal's Family's and Friend's Statements to the Court

At the sentencing hearing, Crystal's family members and a family friend addressed the trial court. Crystal's sister-in-law, Charlie Allmendinger, spoke about how everything was taken from Crystal because of one bad decision by Denys and asked that there be "repercussions" for Denys's actions. Verbatim Report of Proceedings (VRP) at 72. Crystal's aunt, Cynthia Merrill, commented on Denys's disregard for the safety of the others on the road and how Denys had been able to carry on her life while Crystal had been deprived of hers because Denys was "in a hurry." *Id.* at 73. After a short comment about what the family had lost, Merrill stated, "Our family is hoping that you don't get alternative sentencing." *Id.*

Crystal's family's friend, Johna Gibbs, spoke about encountering the accident and the loss of Crystal and asked for "justice" for her. *Id.* at 74. Gibbs also asked that there be consequences for Denys's bad decisions and stated that in this case "there was bad decision after bad decision on a solid-line passing, speeding."[4] *Id.*

Crystal's mother talked about her loss and grief and the physical toll of the trauma of losing her daughter, which caused her to be hospitalized for two weeks. She further commented that Denys had admitted that she knew the car had problems and knew that she should not have been

---

[4] The record shows that there had been allegations that the accident had occurred when Denys had been speeding and trying to pass two cars in a no-passing zone on a curve.

driving the car, but despite taking Crystal's life and the impact on the family, Denys just wanted to go on with her life without any consequences. Crystal's mother also commented, "This [family offender sentencing alternative[5]] thing is a joke and we all know it." *Id.* at 76.

Crystal's father commented, "[T]he defense wants to say that this was not a violent crime"[6] and that this was absurd given the violent nature of the accident. *Id*. Crystal's father also stated that even though Denys blamed the accident on problems with her car, there were "witnesses at the scene of the accident that say [Denys] intentionally crossed a yellow line in a curve doing over the speed limit and struck my daughter head-on." *Id.* at 77. He also stated that he thought the family offender sentencing alternative was "absolutely ludicrous" and that Denys was involved in other cases in which the State was trying to take her children away. *Id*. He asserted that Denys was intentionally delaying and was "playin[g] the system like a game." *Id*. Finally, he stated that even though the authorities were unable to test Denys's blood to determine if she had been impaired, it was common knowledge that she drank and probably smoked pot or used other drugs. He opined that Denys was probably under the influence at the time of the accident.

B.  SENTENCING

After the trial court heard these statements, the State requested midrange sentences. It argued that although there might be "a loophole in the law [that] might permit [Denys] to do a

---

[5] In addition to a first-time offender waiver, Denys had initially sought a parenting sentencing alternative under RCW 9.94A.655. At the sentencing hearing, defense counsel did not argue for this sentencing alternative and it does not appear that the trial court considered it.

[6] During the preceding hearings, the parties had discussed whether vehicular homicide with disregard for the safety of others was a violent crime for purposes of the family offender sentencing alternative.

first-time offender waiver," the State objected to the waiver. *Id.* at 80. It further argued that the legislature never intended the first-time offender waiver to apply to crimes in which someone was killed.

The State argued that the police found and the evidence showed that Denys was speeding and trying to pass two vehicles in a no-passing zone when the accident occurred and that she should be held accountable for her actions. The State also commented that Denys had shown poor decision making before in a situation where she allowed herself and her children to be passengers in a car with her husband while he was allegedly driving under the influence. The State argued this demonstrated that "[h]er decisions have not changed, even with regards to this particular case." *Id.* at 82.

When defense counsel responded that the trial court could not consider the State's reference to Denys being a passenger in a vehicle with an impaired driver because those facts related to a separate matter not before the court, the trial court stated, "The Court did hear other things that the Court believes are beyond the real facts doctrine and will not consider either that one or the other ones I heard." *Id.* at 84. Defense counsel also argued that the first-time offender waiver was "not a loophole" and was not a way to manipulate the system. *Id.* at 85.

After commenting that the references to the action to take away some of Denys's children also went beyond this case, defense counsel spoke about Denys's troubled and abusive family history. He commented that despite a troublesome history, Denys had done well. Counsel requested a first-time offender waiver.

Denys then spoke to the court. In her statement, she expressed regret and recognized the pain she had caused.

After stating that it had read the letters of support for Denys, the trial court stated,

The Court is here to be able to look at a situation, hear from people, hear that they have lost a loved one, and look at the circumstances regarding an offense and the circumstances regarding the defendant.

The Court will not use a first-time offender waiver in this case. *One of the things that is extremely important in sentencing an individual is to look at the proportionateness* [sic] *of a sentence to the criminal act.* Also, the Court would, in a first-time offender waiver, be looking at what issues a person has that can be assisted through the Department of Corrections, because there is only a period of six months of community custody if there are no treatment obligations to do, and then it's twelve months. And I did not hear anything that would relate to a specific issue of chemical dependency or a mental health issue that's been diagnosed or even thought to be present.

. . . .

The Court is imposing a sentence today that is proportionate to the crime that was committed.

*Id.* at 92-94 (emphasis added).

The trial court sentenced Denys to 24 months in custody on the vehicular homicide conviction and 13 months in custody on the bail jumping conviction and ran the sentences concurrently. The court also sentenced Denys to one year of community custody on the vehicular homicide conviction.

C. MOTION FOR RECONSIDERATION

After the trial court filed the judgment and sentence, Denys moved for reconsideration of her sentence. She argued, *inter alia*, that in denying the request for the first-time offender waiver, the court had given Crystal's family's and friend's statements, including their statements suggesting that she was under the influence at the time of the accident, too much weight and had not given the factors supporting the waiver enough weight. Denys claimed that the refusal to grant the waiver "may put the community at greater risk because [she] was denied the opportunity to remain at home with her husband and parent her minor children." CP at 230. She also asserted

6

that the court should not be influenced by the suggestion that she was intoxicated because she did not plead guilty to the "the influence prong of Vehicular Homicide," which would prohibit a first-time offender waiver. *Id.*

The trial court denied the motion for reconsideration. The court stated,

> *The Court was aware at sentencing that [Denys] was eligible to be sentenced as a first-time offender.* The Court chose not to do that. *The primary reason the Court chose not to do that is that the punishment available under a first-time offender waiver, which is limited to zero to ninety days' confinement, was not in any way proportional to the crime that was committed in that the driving pattern of this case.* Looking only at the circumstances that she pled to, as opposed to what was alleged, which was not part of the real facts doctrine, but *looking only at the driving pattern that she pled to, and that someone died, was -- that punishment of zero to ninety days was not proportional to the events that occurred.* And so the Court did impose a standard range sentence, and that was twenty-one months out of a standard range of twenty-one to twenty-seven months. The Court's comment with respect to not benefiting with regard to a first-time offender was primarily looking at the use of the State's resources. With regard to the first-time offender, where there is an individual that is placed on first-time offender and is getting the benefit of a period of supervision where there isn't anything essentially to supervise, other than law-abiding behavior and not driving unless properly licensed and insured, is not the best use of the Court's - or the State's resources. It's not the primary reason the Court made the discretionary ruling it did, but it is a[n] element of whether we are appropriately using resources. The Court will deny the motion for reconsideration.

VRP at 102-03 (emphasis added).

Denys appeals her sentence and the denial of the motion for reconsideration.

DISCUSSION

Denys argues that (1) the trial court erred when it refused to consider the first-time offender waiver because it concluded that the waiver was not available for a vehicular homicide with disregard for the safety of others and (2) the court abused its discretion in denying the first-time offender waiver because it placed undue emphasis on Crystal's family's and friend's statements,

7

No. 51728-1-II

did not take into account the benefit the waiver would provide, and acted inconsistently with the purposes of the SRA. We disagree.

## I. LEGAL PRINCIPLES

The first-time offender waiver statute, RCW 9.94A.650, provides in part,

(1) This section applies to offenders who have never been previously convicted of a felony in this state, federal court, or another state, and who have never participated in a program of deferred prosecution for a felony, and who are convicted of a felony that is not:
    (a) Classified as a violent offense or a sex offense under this chapter;
    . . . .
    (2) In sentencing a first-time offender the court may waive the imposition of a sentence within the standard sentence range and impose a sentence which may include up to ninety days of confinement in a facility operated or utilized under contract by the county and a requirement that the offender refrain from committing new offenses.
    (3) The court may impose up to six months of community custody unless treatment is ordered, in which case the period of community custody may include up to the period of treatment, but shall not exceed one year.

Whether to grant a request for a first-time offender waiver sentence is discretionary. *State v. Johnson*, 97 Wn. App. 679, 682, 988 P.2d 460 (1999). A trial court abuses its discretion if its decision "is manifestly unreasonable or based upon untenable grounds or reasons." *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). Although, generally, a defendant cannot appeal a standard range sentence,[7] a categorical refusal to impose it for a class of offenders or a failure to meaningfully consider a request for the waiver is effectively a failure to exercise discretion and is subject to reversal. *See State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005).

---

[7] RCW 9.94A.525(1).

8

II.  AVAILABILITY OF FIRST-TIME OFFENDER WAIVER

Relying on *State v. Stately*, 152 Wn. App. 604, 216 P.3d 1102 (2009), Denys first argues that the trial court erred when it categorically refused to consider the first-time offender waiver after determining that the waiver was not available for a vehicular homicide with disregard for the safety of others since the offense was a class A felony.  The State responds that this argument fails because the record shows that the trial court was aware Denys was eligible for the first-time offender waiver.  We agree with the State.

In *Stately*, we addressed whether the trial court had the legal authority to grant a first-time offender waiver when the offense was vehicular homicide with disregard for the safety of others. *Id.* at 607.  We held that because the crime of vehicular homicide with disregard for the safety of others was not a violent offense, the court had the authority to grant the waiver.  *Id.* at 610.

As the State asserts, the record does not show that the trial court failed to understand that it had the authority to grant the first-time offender waiver.  At the hearing on the motion for reconsideration, the court expressly acknowledged that it had the authority to grant Denys's request for a first-time offender waiver, but it stated that it chose not to grant the waiver because it found the waiver "was not in any way proportional to the crime."  VRP at 103.  Because the court understood it had the authority to consider the waiver, this argument fails.

III.  NO ABUSE OF DISCRETION

Denys next argues that the trial court erred in giving too much weight to Crystal's family's opinions and not enough weight to the other factors, namely the risk to the community because

9

she could not remain at home with her minor children, that supported the first time offender waiver. She also argues that the court abused its discretion because its refusal to grant the first-time offender waiver was inconsistent with the purposes of the SRA as expressed in RCW 9.94A.010. We disagree.

As noted above, the trial court had broad discretion in granting or denying a first-time offender alternative. *Johnson*, 97 Wn. App. at 682. Denys does not present us with any authority establishing that the trial court must give more or less weight to any particular factor and the record shows that the trial court meaningfully considered her request for the waiver.

Furthermore, Denys does not present us with any authority that a trial court must explain why it declined to impose the first-time offender alternative. Denys suggests that the trial court was required to issue findings of fact in support of its decision to deny the request for the first-time offender waiver. But she cites no authority for this statement. Thus, we do not address whether written findings of fact were required. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Denys fails to show that the trial court abused its discretion in denying the first-time offender alternative. Accordingly, this argument fails.

No. 51728-1-II

Because the trial court was aware that it had the authority to grant a first-time offender waiver and it meaningfully considered whether to grant the waiver, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, J.

LEE, A.C.J.

11