IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77597-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| CHEYANNE ARIE JARRELL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 22, 2019 |

LEACH, J. — Cheyanne Jarrell appeals her conviction for second degree manslaughter. She contends that the prosecutor committed misconduct during closing argument when discussing reasonable doubt and sentencing. Because the prosecutor's remarks did not misstate the law or the jury instructions, this claim fails. We also reject Jarrell's argument that the trial court abused its discretion by declining to sentence her below the standard range due to her youthfulness. We affirm.

## FACTS

Cheyanne Jarrell cared for baby Kailynn while Kailynn's parents worked. Jarrell had her own child the same age as Kailynn. She watched the two babies at her mother's house, where she lived. On February 26, 2016, Kailynn's mother dropped her off with Jarrell as usual around 6:00 a.m. Kailynn seemed normal

that day. But at some point, she stopped breathing. Jarrell's sister performed CPR (cardiopulmonary resuscitation). Paramedics transported Kailynn to the hospital. She had no external signs of injury but did have bilateral subdural hemorrhage, diffuse cerebral edema, and retinal hemorrhage, all consistent with abusive head trauma or shaking. In spite of numerous medical interventions over the next three days, Kailynn died.

The State charged Jarrell with first degree manslaughter. At trial, the State's expert witnesses opined that abusive head trauma caused Kailynn's death. During his rebuttal to the defense's closing argument, the prosecutor discussed the burden of proof and sentencing:

> And so don't discount that modifier. That word "reasonable" is there for a reason. If you encounter an open question in your discussion, if somebody says, yeah, well, what about this? I would suggest that the proper test to decide what to do with that question is to ask if that is reasonable. This alternative theory that's being proposed, is that reasonable? And look at the evidence and use your common sense and ask yourself whether or not it's a reasonable question, a reasonable point of contention.
>
> Next I want to address a subject that I will admit is difficult for me to figure out how to approach, and I can't come up with any better way to do it than just to deal with it head on. And that's to acknowledge the immense difficulty that you may face in deciding this case, because you—all of you are smart enough to recognize the implications of your decision. I'm sure you thought about it before. I'm sure it's growing in your mind as you're sitting here now, and it's going to continue to be in your minds as you discuss this case.
>
> You all are smart enough to know that whatever decision you are about to make is going to have grave life-altering consequences for someone, for Kailynn's family who

are grieving still, for the defendant, for her own family, and for her own daughter. There is no avoiding it. That is the difficult position that you are in, and I don't envy it.

That being what it is, the jury instructions, the law that the Court gave you does address that to a certain extent. And it's kind of built into the legal system, recognizing the fact that there are difficult, life-altering decisions that are made in the context of a criminal case, and this is certainly one of those.

Some of the last clauses in the very first instruction, Instruction Number 1, address it, and there are a couple points to make here.

One is—maybe this will come as something of a relief, maybe not, but the instruction says you have nothing whatever to do with any punishment that may be imposed in case of a violation of the law.

You may not consider the fact that punishment may follow conviction, except insofar as it may tend to make you careful.

The point is certainly recognize the fact that your decision is going to have implications. If you convict the defendant, as I'm asking you to do, there will most certainly be punishment. There will most certainly be fallout and implications and [e]ffect on her life and the people in her life. But that is not your decision to make, what that punishment looks like. Your job is more limited. It's more narrow.

You should consider it. It should cause you to be careful, which is what I started out by asking . . . , look carefully at the evidence, consider the arguments of the parties; but you can't let it interfere with your view of the evidence and your view of what has been proved in this case.

Jarrell did not object to this argument.

The jury acquitted Jarrell of first degree manslaughter and convicted her of second degree manslaughter. At sentencing, Jarrell asked the court for an exceptional sentence below the standard range. She argued that because she

was only 22 years old at the time of Kailynn's death, she lacked the capacity to appreciate the wrongfulness of her conduct. The trial court denied Jarrell's request and sentenced her to 27 months, the high end of the standard range.

ANALYSIS

Prosecutorial Misconduct

Jarrell challenges two parts of the prosecutor's closing argument. First, she contends that the prosecutor mischaracterized the burden of proof. Second, she argues that the prosecutor improperly urged the jury to consider sentencing during their deliberations.

To prove prosecutorial misconduct, the defendant must show that the prosecuting attorney's conduct was both improper and prejudicial.[1] If the defendant does not object to the alleged misconduct at trial, the issue is usually waived unless the misconduct was "'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'"[2] An appellate court reviews a prosecuting attorney's alleged improper remarks "in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury."[3] During closing arguments, a prosecutor may argue points of law that the court has included in its jury instructions.[4]

---

[1] State v. Weber, 159 Wn.2d 252, 270, 149 P.3d 646 (2006).
[2] Weber, 159 Wn.2d at 270 (quoting State v. Stenson, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997)).
[3] State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).
[4] State v. Sandoval, 137 Wn. App. 532, 540, 154 P.3d 271 (2007).

Jarrell argues that the prosecutor's discussion of reasonable doubt "left the jury with the impression that so long as his interpretation of the evidence was reasonable, the State had met its burden." "Arguments by the prosecution that shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute misconduct."[5]

In Lindsay, the prosecutor improperly attempted to quantify the reasonable doubt standard by comparing it to an incomplete jigsaw puzzle of the Seattle skyline: "You could have 50 percent of those puzzle pieces missing and you know it's [a picture of] Seattle."[6] The prosecutor also improperly trivialized the burden of proof by comparing it to everyday decision-making such as crossing a sidewalk with a car approaching.[7] Finally, the prosecutor misstated the burden of proof by telling the jury that its job was to "speak the truth."[8]

Here, the prosecutor discussed the reasonableness aspect of the reasonable doubt standard. The prosecutor argued that when the jury considered whether the State met its burden, it should use common sense to decide whether a question about the evidence is reasonable. Unlike the remarks in Lindsay, this argument does not quantify or trivialize the burden of proof. Nor does it misstate the burden of proof. Rather, the prosecutor's argument largely tracks the jury instruction, which explains that "[a] reasonable doubt is one for

---

[5] State v. Lindsay, 180 Wn.2d 423, 434, 326 P.3d 125 (2014).
[6] Lindsay, 180 Wn.2d at 434.
[7] Lindsay, 180 Wn.2d at 436.
[8] Lindsay, 180 Wn.2d at 436-37.

which a reason exists." The prosecutor merely argues that the jury apply the "reasonable" modifier to reasonable doubt. The remark was not improper. The prosecutor was entitled to argue this point of law within the jury's instructions, and doing so did not shift the burden of proof.

Jarrell cites two cases from other jurisdictions to support her argument. In People v. Centeno,[9] the prosecutor contrasted the reasonableness of the defense and prosecution theories in closing argument. The court held that while it is permissible to argue that the jury "may reject impossible or unreasonable interpretations of the evidence," the prosecutor impermissibly left the jury with the impression that "so long as [the State's] interpretation of the evidence was reasonable, the People had met their burden."[10] The closing argument here is unlike Centeno. Centeno disapproved of an argument that the State met its burden by providing a reasonable theory of the case. Here, the prosecutor asked the jury to reject unreasonable questions about the evidence. Centeno expressly permits this argument.

Jarrell also cites State v. Sappington.[11] In that case, the Kansas Supreme Court disapproved of a closing argument asking, "[I]s it reasonable given that evidence that we have that Marc Sappington is the one that did this? And I suggest to you the answer is, yes, it is."[12] As in Centeno, Sappington

---

[9] 60 Cal. 4th 659, 338 P.3d 938, 180 Cal. Rptr. 3d 649 (2014).
[10] Centeno, 60 Cal. 4th at 672.
[11] 285 Kan. 176, 169 P.3d 1107 (2007).
[12] Sappington, 285 Kan. at 182-83.

disapproved of an argument that the State met its burden by presenting a reasonable theory of the case. But, unlike in Sappington, here, the prosecutor did not argue that his own theory was reasonable. Sappington does not support Jarrell's argument. The prosecutor did not improperly shift or mischaracterize the burden of proof in closing argument.

Jarrell next argues that the prosecutor improperly discussed sentencing during closing argument. "The question of the sentence to be imposed by the court is never a proper issue for the jury's deliberation, except in capital cases."[13] Here, the prosecutor's closing argument merely echoed the court's instruction to the jury: "You have nothing whatever to do with any punishment that may be imposed in case of a violation of the law. You may not consider the fact that punishment may follow conviction except insofar as it may tend to make you careful." No error occurred.

Jarrell argues that we should reverse her conviction due to the cumulative effect of improper argument by the prosecutor. Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors result in a trial that is fundamentally unfair.[14] Because we find no error in the prosecutor's argument, the cumulative error doctrine does not apply.

---

[13] State v. Bowman, 57 Wn.2d 266, 271, 356 P.2d 999 (1960).
[14] State v. Emery, 174 Wn.2d 741, 766, 278 P.3d 653 (2012).

Sentencing

Jarrell argues that the trial court abused its discretion when declining to deviate from the standard sentencing range. Jarrell argues that the sentencing court failed to consider her youthfulness as a mitigating factor.

A court has "complete discretion" in weighing mitigating factors related to youth when sentencing.[15] Reviewing courts cannot reweigh evidence on appeal.[16]

Here, the court explicitly considered mitigating factors related to Jarrell's youth:

> It's offered to this Court by the defense that, because the defendant was 22 years of age that her brain was insufficiently developed to appreciate the wrongfulness of your conduct or to conform your conduct to the requirements of the law.
>
> Ms. Jarrell, I'm not persuaded by that argument. You're a mother yourself. As I mentioned a few moments ago, you quite capably cared for your own child. You knew by your own admission, you said on your cross-examination, you knew mishandling a child could cause serious injury or death. You knew.
>
> . . . .
>
> This Court does not find substantial and compelling reasons to enter a mitigative sentence below the standard range. No legal grounds have been submitted to the Court to go above the standard range either. So the Court will impose a standard range sentence.

---

[15] State v. Houston-Sconiers, 188 Wn.2d 1, 21, 391 P.3d 409 (2017).
[16] State v. Ramos, 187 Wn.2d 420, 453, 387 P.3d 650, cert. denied, 138 S. Ct. 467 (2017).

Although Jarrell may disagree with how the court weighed the evidence, we do not reweigh the evidence on review. Jarrell does not claim the absence of substantial evidence to support any of the court's findings. So we consider them true on appeal.[17] The court did not abuse its discretion when it sentenced Jarrell.

We affirm.

_Leach, J._

WE CONCUR:

---

[17] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).