IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| WENDY H LI, | No. 82076-1-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ROLAND MA, | |
| Appellant. | |

HAZELRIGG, A.C.J. — Roland Ma appeals the trial court's vexatious litigation order and insists that it violates his right to due process and equal protection under our state and federal constitutions. Because Ma deliberately failed to comply with RAP 10.3(a), and expressly and intentionally failed to provide any reference to the record in support of his assignments of error, we do not reach his challenges. Accordingly, we affirm.

FACTS

In May 2020, Roland Ma began a student internship with Washington Care Center[1] (WCC) under the direct supervision of Wendy Li, the social services director of the facility. Within his first few months, Ma had problems with multiple WCC employees, filed a false report that a resident was suicidal, and procured forged subpoenas to grant unauthorized access to the facility. As a result, Ma was suspended by WCC and expelled from Walden University.

---

[1] WCC is a licensed long-term care facility in Seattle, Washington.

That October, Li and two other WCC employees, Esther Densmore and Rachel Trotter, filed petitions for protective orders against Ma in King County District Court. Li described several incidents of Ma's alleged harassment and stalking, involving unsolicited text messages, phone calls, faxes, e-mails, Amazon.com[2] deliveries, and "sham 'Handsomeland'[3] invoices," which all occurred between September 11 and 29, 2020. On October 13, 2020, the King County District Court entered a temporary protection order that prohibited Ma from all contact with Li and required him to stay 500 feet away from her residence and WCC. However, Ma's conduct continued thereafter, and, on October 27, 2020, the district court reissued the temporary protection order and transferred the case to King County Superior Court.[4]

On November 10, 2020, the hearing on both Li and Densmore's temporary protection orders took place before Judge Ramseyer in King County Superior Court. After counsel for the petitioners[5] introduced the two orders at issue, Ma stated that he was "not aware of the [Densmore] case" and "ha[d] not been served anything personally." Petitioners' counsel attested that he had served Ma with the orders in October and also noted that he and his firm were "involved in multiple litigations with Mr. Ma." According to petitioners' counsel,

---

[2] An e-commerce website.

[3] Handsomeland LLC appears to be a company that Ma created and has used as a means of communicating with petitioners.

[4] The district court also sua sponte issued an order of vexatious litigation against Ma based upon his conduct in response to the petitions for protection orders. The court found that Ma had "sent 118 separate facsimile transmissions totaling over two thousand pages" over a two-day period, and there was "no evidence [Ma] served opposing parties with facsimiles." Further, the court found that Ma had made repeated attempts at ex parte contact and "filed numerous intermediate appeals without a legal or factual basis and inconsistent with court rules." Accordingly, the court enjoined Ma from filing any further motions or exhibits without prior court approval.

[5] Both petitioners were represented by the same attorney.

> [Ma]'s recently blocked my e-mail. I believe he's blocked the e-mail of our entire firm. So to the extent that he says he doesn't have notice of things where we continue to copy him, and we get bounce-back e-mails that he's blocked our e-mail account.

Ma responded that he would only accept service through physical mail, or, if the documents are less than 20 pages, by fax. Ma further asserted there were "things that needed to be addressed" regarding a reasonable accommodation under GR 33,[6] but would not specify on the record what sort of accommodation he was seeking.

The trial court explained to Ma that it was "having a little bit of a hard time understanding the service issue since you are here and you have been providing numerous filings related to these matters." However, in order to clear up the issues of service and determine whether Ma needed accommodations, the trial court decided to special set the upcoming hearing for November 13. The court also required Ma to provide an unblocked e-mail address for service. After Ma insisted on service by physical mail or fax, the court ruled, "under these conditions, I am authorizing e-mail service because there has been a lot of ducking and hiding here. And I want to make sure that there is no question that you received all of this documentation." Before the close of the hearing, Ma asserted that Walden University, which he deemed a "third-party defendant," needed to be informed of the situation. The trial court was "not aware of a third-party defendant" and petitioners' counsel explained that Ma had improperly identified Walden University

---

[6] GR 33 addresses "requests for accommodation by persons with disabilities" by defining relevant terminology, setting out the process for requesting accommodations and consideration by the courts, as well as procedural requirements for the court's decision.

as a third-party defendant to "somehow bring[] Walden University into the case."

Lastly, petitioners' counsel addressed Ma's "outrageous" litigation tactics:

> Mr. Ma is sending so many faxes to so many different fax machines at [WCC], which is our client and the employer of Ms. Densmore, Ms. Li, that [WCC] is unable to function with its fax machine. It's unable to send things; it's unable to receive things. This is a long-term care facility during a pandemic. They've had a COVID[7] outbreak recently.
>
> And to give an example, Mr. Ma will send an e-mail, then fax the e-mail to our office, fax it to multiple places at [WCC]. We've told him repeatedly this is a represented party; there's no reason for him to make—to be making any contact with them. And the volume of it is so outrageous that it's really becoming a serious health problem and a problem for the care of the patients of [WCC] to where his conduct has really inhibited the ability to just have that facility function as usual.
>
> So I would really ask the [c]ourt to make clear to Mr. Ma right now on the record that [WCC], Ms. Li, Ms. Densmore, these are represented parties. Nothing should be being sent to them directly. I have advised Mr. Ma of this. My colleague, Ms. Wick, has advised Mr. Ma of this even in the first week that he brought these issues, and he continues to do it.
>
> And it's creating such a disaster of paper and duplication that it is the most vexatious, outrageous conduct that any of us have ever seen in our careers. There's a record of Mr. Ma doing this in other cases that has also resulted in anti-harassment orders. And I really just need something from the [c]ourt today to get this to stop.

In response, Ma stated that "we shouldn't address this today" and requested a "motion hearing" in order to "get the transcript from the [d]istrict [c]ourt." The trial court disagreed with Ma, reiterated its rulings regarding service and future correspondence,[8] and reissued the temporary protection orders for Li and Densmore.

---

[7] Novel coronavirus infectious disease.

[8] The court explained that: both parties were to correspond only through e-mail or e-service, every party should be served with the same documentation, no private conversations with the court or another party were allowed, all communication related to the case must include all parties to the

Following the hearing, Ma filed a notice of discretionary review with this court in an attempt to stay the "enforcement of judgment." However, because the superior court had not entered judgment, there was no judgment to stay and the temporary restraining orders remained in effect. That same day, in direct violation of court orders, Ma sent the trial court multiple e-mails without including the other parties. The next day, Li's counsel attempted to correspond with Ma via e-mail and received a notice that the delivery to Ma had "failed permanently." On November 12, Ma sent the court three more ex parte e-mails and Li's counsel continued to receive rejection notices from the e-mail address that Ma provided at the hearing. Ma then sent an e-mail to Presiding Judge James E. Rogers of King County Superior Court, raising an ethics complaint under the Code of Judicial Conduct and requesting that all cases be "dropped." Judge Rogers told Ma to "contact the appropriate court" and noted that he would "not respond again."

On November 12, the trial court issued an order that confirmed the November 13 hearing. The order notified the parties that they should be prepared to discuss Ma's notice of appeal, the status of his e-mail address, and whether Ma should be "held in contempt for misrepresentations to the [c]ourt and failing to comply with the [c]ourt's November 10, 2020" ruling. The trial court also made accommodations for Ma pursuant to GR 33.

On November 13, Ma filed a motion for a "Trial by Affidavit" along with a "Notice of Disqualification of Judge Judith H. Ramseyer."[9] Ma then failed to appear

---

case, no faxes unless agreed to by both parties, and Ma was required to unblock his e-mail so that service could be completed.

[9] Judge Ramseyer is the superior court judge who was assigned to hear the case.

at the hearing set that same day. The trial court denied Ma's motion for disqualification and proceeded with the hearing, stating:

> Things are out of control. Judge Hirakawa in the [d]istrict [c]ourt has issued two vexatious litigation orders—three vexatious litigation orders. Thank you, Mr. Watson. And the volume of litigation, there are I counted 13 active cases, and there are twice that many that have been filed and completed in one way or another in our court. I know there is at least one U.S. District Court case.
>
> I couldn't open the affidavit of disqualification this morning because so many documents were attached to that filing. And that's very disturbing conduct. It is designed to, in my mind, overwhelm the fair resolution of matters because it creates so much confusion. And so in order to fully and fairly resolve these matters, I'm really committed to getting a handle around it and proceeding in a very deliberate manner.

After the court addressed Ma's absence, motions, and appeal, both Li and Densmore testified to Ma's continued harassment and stalking. At the conclusion of the petitioners' testimony, the trial court found that Ma had "engaged in a very intentional and abusive pattern of harassment" against both Li and Densmore and granted their petitions for one-year anti-harassment orders. Li's counsel then requested that the trial court enter a vexatious litigant order to prohibit Ma from filing further documents without prior court approval. The judge took the request under advisement.

In the days following the hearing, Ma continued to violate the trial court's correspondence orders as well as Li's protection order. On November 16, Ma e-mailed the trial court and stated that he would "file a complaint with [the Department of Justice] with Judge Ramseyer [sic] continued to refuse to seal my records pursuant to GR[ ]33." After the court clerk confirmed receipt of Ma's e-mail, Ma sent another in which he claimed to be "done with all these messes" and asserted

that the "[c]ourt is not following any rules." The next day, November 17, Chief Judge Regina S. Cahan of King County Superior Court issued an order that linked all of Ma's cases and assigned them to Judge Ramseyer. The order was in accordance with the court's finding that Ma was a "frequent litigator" who had "over 20 cases in [s]uperior [c]ourt since 2019."

On November 18, 2020, Judge Ramseyer entered an order of vexatious litigation against Ma and set conditions for him to follow. The order delineated Ma's various misconduct in the matters before the court and noted that "many of his actions flagrantly violate court orders and wholly misunderstand or deliberately disregard" them. The court concluded that Ma's actions "demonstrate a pattern of abuse of judicial process" and "have had the effect of impeding progress, causing confusion, misrepresenting actions, violating court orders, wasting money and judicial resources, and harassing parties, their counsel, and the [c]ourt with unwarranted paperwork, distractions, and veiled threats." Among other conditions, the order prohibited Ma from filing any document of more than five pages without prior court approval, corresponding with other parties in any manner besides e-mail, communicating with Li or members of her counsel's law firm, and filing additional causes of action in King County Superior Court without prior court approval. The order also provided that if Ma failed to abide by the terms of the order, "the opposing party may move, or the [c]ourt sua sponte may move, for a finding of contempt and sanctions, up to and including dismissal of Mr. Ma's claims."

Ma violated the order that same day and continued to do so through December when Li moved for an order of contempt against Ma and the trial court held a show cause hearing. After hearing from the parties, the court found Ma to have "willfully violated" the vexatious litigation order on "multiple occasions" and, when the court found some of Ma's testimony not credible, Ma left the hearing and did not return. The court proceeded to find Ma in contempt for his continued violations of both the vexatious litigation order as well as the protection orders.

Ma has filed numerous appeals throughout these proceedings, only some of which are referenced here. On November 10, 2020, he filed a notice for discretionary review with this court and challenged the reissuance of the temporary protection orders entered that same day. Later that month, he filed an "amended notice of appeal" in which he also designated the superior court's vexatious litigation order. On December 9, 2020, Ma filed another motion for discretionary review along with an amended motion for discretionary review, and on December 22, 2020, this court entered an order that designated him a vexatious litigant. On January 20, 2021, a commissioner of this court issued another order which explained that, unless Ma filed an amended motion that complied with the rules of appellate procedure by February 5, 2021, the case could be dismissed. Ma then filed a motion to modify our court clerk's vexatious litigant ruling, which was denied by a panel of judges, and subsequently filed a motion for discretionary review of that denial with our Supreme Court, which was also denied. On October 15, 2021, this court's commissioner entered a ruling denying Ma's motion for discretionary review as to the superior court's vexatious litigation order.

On December 14, 2021, this court granted, in part, Ma's motion to modify the commissioner's October 15, 2021 ruling, and accepted discretionary review "solely with regard to the following two issues: (1) whether the trial court erred by entering the vexatious litigant order without notice and an opportunity to object and (2) whether reversal is required because the vexatious litigant order is overly broad."

## ANALYSIS

Ma challenges the "sua sponte"[10] vexatious litigant order and argues that its conditions were "arbitrary and capricious and grossly disproportionate" in violation of our state and federal constitutions.[11]   However, as his opening brief makes clear, Ma explicitly "decided not to cite any Clerk's Paper or [Verbatim Report of Proceedings] on the record, because this sua sponte vexatious litigant order has already created a significant damage [sic] to [his] life."
Pro se litigants and attorneys are held to the same standards and "rules of procedural and substantive law." Winter v. Dep't of Soc. & Health Servs., 12 Wn. App. 2d 815, 844, 460 P.3d 667 (2020); In re Decertification of Martin, 154 Wn. App. 252, 265, 223 P.3d 1221 (2009).  RAP 10.3(a) requires appellants to provide references to the record in both the "Statement of the Case" and "Argument" sections of their brief.  RAP 10.3(a)(5), (6).  Ma provides none.  While his brief provides some citation to law, he does not attempt to apply it to the facts of his case in order to demonstrate entitlement to the relief he seeks.

---

[10] Though Judge Ramseyer's vexatious litigation order was not issued sua sponte, it appears that Ma is referring to that order as his briefing refers only to Judge Ramseyer.
[11] Ma assigns error to the "pre-filing restrictions" within the order.

"We will not consider an inadequately briefed argument." <u>Norcon Builders, LLC v. GMP Homes VG, LLC</u>, 161 Wn. App. 474, 486, 254 P.3d 835 (2011).  An argument that is wholly unsupported by any citation to the record is inadequate and will not be reviewed.  <u>See</u> <u>Cowiche Canyon Conservancy v. Bosley</u>, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).  Because Ma's briefing lacks any reasoned argument in support of his assignments of error and fails to provide any relevant legal basis for challenging the vexatious litigation order, we affirm without reaching the merits.

WE CONCUR: