# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 39423-9-III |
| | ) | |
| SARAH HANNAH, | ) | |
| | ) | |
| Respondent, | ) | ORDER GRANTING |
| | ) | MOTION TO PUBLISH |
| and | ) | |
| | ) | |
| JON-LUKE McADAMS, | ) | |
| | ) | |
| Appellant. | ) | |

THE COURT has considered nonparties Family Violence Appellate Project, National Center on Domestic and Sexual Violence, Project DVORA / Jewish Family Service, Tacomaprobono Community Lawyers, and the Domestic Violence Legal Empowerment and Appeals Project's motion to publish the court's opinion filed on August 1, 2023, and the response thereto, and is of the opinion the motion to publish should be granted. Therefore,

IT IS ORDERED the motion to publish is granted. The opinion filed by the court on August 1, 2023, shall be modified on page 1 to designate it is a published opinion and on page 19 by deletion of the following language:

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

PANEL: Judges Lawrence-Berrey, Pennell, and Staab

FOR THE COURT:

_____
GEORGE FEARING
CHIEF JUDGE

**FILED**
**AUGUST 1, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 39423-9-III |
| | ) | |
| SARAH HANNAH, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| JON-LUKE McADAMS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Jon-Luke McAdams appeals after the trial court determined that adequate cause did not exist for him to seek modification of his parenting plan to grant him mutual decision-making authority over his children. He argues the trial court erred in its determination and by sanctioning him by requiring him to pay Sarah Hannah[1] her reasonable attorney fees. We disagree and affirm. We additionally conclude that this appeal is frivolous and award Ms. Hannah her reasonable attorney fees on appeal.

---

[1] Ms. Hannah identifies as nonbinary, but uses the honorific "Ms." and she/her pronouns in her briefing.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39423-9-III
*Marr. of Hannah & McAdams*

FACTS

The parties share two children.  Under the temporary parenting plan in place during their divorce proceedings, Mr. McAdams had limited visits with the children, which increased in time as he engaged in and complied with treatment for alcohol use disorder and domestic violence.

*Permanent parenting plan*

In the permanent parenting plan, the superior court found that Mr. McAdams had a history of domestic violence and a long-term problem with substance abuse.  The parties agreed there would be no limitations on either parent, and the court granted sole decision-making to Ms. Hannah.  The court's reasons for doing so were twofold: first, the court was required to limit decision-making because of the domestic violence finding, and, second, Ms. Hannah did not want to share decision-making, which was reasonable because of Mr. McAdams's substance abuse problems and their inability to cooperate with each other in decision-making.  The parenting plan provided that the children would live with Mr. McAdams approximately 5 out of every 14 days.

The court listed a number of provisions in section 14 of the parenting plan so the parties could safely and effectively communicate, given Mr. McAdams's history of domestic violence and alcohol abuse:

2

No. 39423-9-III
*Marr. of Hannah & McAdams*

- Using an app to communicate;
- Prohibiting Mr. McAdams from using nonprescribed drugs or alcohol;
- Prohibiting the parties from making derogatory remarks about the other within the hearing range of the children;
- Prohibiting the parties from using the children to gather information about the other;
- Prohibiting the parties from discussing the litigation or adult issues with the children;
- Requiring Mr. McAdams to obtain a urinalysis if Ms. Hannah reasonably believes he is under the influence of alcohol;
- Requiring Mr. McAdams to engage in family counseling with the children, with both parents having access to the children's records from the counselor;
- Prohibiting the parties from having face-to-face contact, and requiring Mr. McAdams to stay an appropriate distance from Ms. Hannah; and
- Enabling Ms. Hannah to return to court and request a restraining order, and providing that any violation of section 14 of the parenting plan would be prima facie evidence for the basis of a restraining order.

Clerk's Papers (CP) at 7.

*Petition for modification*

On August 17, 2022, Mr. McAdams petitioned to modify the parties' parenting plan. He did not request a major or minor modification; rather, he requested "other changes" under RCW 26.09.260(10), specifically changes to decision-making because of a claimed substantial change in one parent or child's situation. CP at 12. Mr. McAdams explained:

3

No. 39423-9-III
*Marr. of Hannah & McAdams*

> I have addressed the [domestic violence] and substance abuse issues that led to my limited decision-making.  Sarah is making sweeping unilateral decisions that are so important regarding my daughter['s] gender identity that I ask to be involved as a parent, and to assure [sic] the best interests of my daughter are met.  These substantial changes in circumstances merit my full involvement in decision-making.

CP at 12.

Although Mr. McAdams filed a petition to modify the parenting plan, he did not move for a finding of adequate cause.  Ms. Hannah instead did so, asking the court to deny the petition, and was thus considered the moving party below.  Ms. Hannah argued there had not been any substantial change in circumstances.  She noted in regard to a restraining order request, "I believe the respondent's litigation is frivolous and intended to harass me.  It may be necessary for the court to add protections for me to protect me from abusive use of litigation."  CP at 19.  She further stated in a declaration that Mr. McAdams "continues to try to manipulate me, use the children as a weapon, engage in unnecessary conflict, and continues his attempts to control and cause me harm."

CP at 23.  Ms. Hannah recounted a number of instances where Mr. McAdams delayed signing necessary forms or taking actions to separate their assets as required by the decree of dissolution.  In one instance, Mr. McAdams had their minor children sign a form as witnesses, requiring resubmission of the form and needlessly involving the children in litigation.

4

No. 39423-9-III
*Marr. of Hannah & McAdams*

Ms. Hannah explained that she and her partner were nonbinary and her children had become curious about gender identity. Ms. Hannah had researched how to explain gender identity in a neutral manner and found a book written for children. The book answered the children's questions, and they asked to take the book home to read with Mr. McAdams. Mr. McAdams refused to read the book and accused Ms. Hannah of attempting to influence the children to be nonbinary. Their older daughter, then seven years old, appeared naturally curious about gender as it applied to her, and Ms. Hannah proposed counseling so their daughter could talk to someone neutral about her feelings.

Ms. Hannah stated she could not foresee a time where she would be able to interact with Mr. McAdams in person or make decisions with him because of "the domestic violence in our marriage and his continued harassment and attempts to manipulate me since the final orders were entered . . . . It would not be in the best interest of our daughters to force me to interact with my abuser and the statute protects me from having to do so." CP at 26.

Mr. McAdams responded that there had been a substantial change of circumstances because he had completed his domestic violence and substance abuse requirements and had no problems since. Additionally, their daughter was going through a substantial change in circumstances "regarding her gender issues." CP at 42. He

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39423-9-III
*Marr. of Hannah & McAdams*

opined that nonbinary genders were not common and thus their daughter needed the

involvement of professionals and both parents to serve her best interests. He did not want

Ms. Hannah's "enthusiasm for her non-binary lifestyle [to] pass over into advocacy of a

non-binary gender for" their older daughter. CP at 44. He wanted "objective,

professional, counseling for the girls, and . . . full involvement in that process to make

sure all the dialogue is healthy on such a fraught issue." CP at 46.

Mr. McAdams stated he did not seek to change any limitations and was only

seeking mutual decision-making. He explained that he had delayed signing legal and

financial documents for Ms. Hannah because of COVID-19 and fear of violating a

restraining order, and asserted that Ms. Hannah was not ultimately harmed. He was not

aware of an age requirement for witnesses and the children did not know they were

signing a legal document as he told them they were practicing their handwriting.

He submitted messages between himself and Ms. Hannah purporting to show that they

could cooperate about parenting.

Despite not requesting any major or minor modification in his petition and stating

he did not seek any adjustment other than mutual decision-making, Mr. McAdams

submitted a proposed parenting plan that contained numerous changes from the parties'

permanent parenting plan. It removed the findings that he had a history of domestic

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39423-9-III
*Marr. of Hannah & McAdams*

violence and substance abuse that interfered with his ability to parent. It altered a number of provisions relating to the children's residential schedule and the parties' dispute resolution process.

Mr. McAdams's proposed parenting plan also substantially altered the "other" provisions in section 14. It removed the outright prohibition on face-to-face contact, instead providing that face-to-face contact should be avoided. It replaced the unilateral conditions on Mr. McAdams's substance use into bilateral conditions that applied to both parents. It removed the condition that neither parent discuss the litigation or adult issues with their children. It removed the provision that Mr. McAdams engage in family counseling with their children and giving both parents access to the children's counseling records. Instead, it gave both parties "full and complete access to all records involving the children, no matter the location or source of the records." CP at 40. Finally, it removed the provision that violation of any part of section 14 was prima facie evidence for a restraining or protection order.

Ms. Hannah replied that Mr. McAdams's domestic violence and substance abuse treatment had occurred before the entry of the permanent parenting plan and could not be a substantial change in circumstances. She argued that because gender was a societal issue, it was expected that children would have questions and those questions did not

7

No. 39423-9-III
*Marr. of Hannah & McAdams*

constitute a substantial change in circumstances either. She asserted that Mr. McAdams's

domestic violence was not remedied, and she was not prepared to see him in person or

make medical and education decisions with him.[2]

The commissioner denied Mr. McAdams's petition to modify the parenting plan,

finding there was not adequate cause to hold a hearing on the matter. It found that Mr.

McAdams's petition had been brought in bad faith and ordered that he pay Ms. Hannah's

reasonable attorney fees.

Mr. McAdams moved to revise the commissioner's ruling. In denying his motion

to revise, the trial court acknowledged that Mr. McAdams believed he had overcome his

history of domestic violence, but

> Ms. Hannah certainly doesn't, and I think she has cited some very specific
> incidents where she feels like that power and control dynamic continues to
> exist even despite the fact that they are separated. Having the child sign a
> form so she could get access to her retirement account which is wholly
> inappropriate. Dragging his feet on getting his name removed from the
> bank account. Doing the quit claim deed. All of those things to her, as the
> victim of a history of domestic violence, continued to be power and control
> dynamics. And so while Mr. McAdams may have done treatment, his

---

[2] Mr. McAdams filed a declaration the day the parties' hearing was scheduled and
Ms. Hannah moved to strike the document. The commissioner declined to consider the
late declaration, yet also noted it would not consider material in Ms. Hannah's reply
declaration that was not responsive to Mr. McAdams's response declaration. Mr.
McAdams did not move to revise the commissioner's decision on the motion to strike.
For this reason, we will not consider Mr. McAdams's late declaration.

8

No. 39423-9-III
*Marr. of Hannah & McAdams*

behavior post-treatment doesn't necessarily convince the Court that, you know, the history is gone simply because he's complied with treatment.

Rep. of Proc. (RP) at 22.

The court noted that while RCW 26.09.191 did not have a sharp limitation on parenting time, "decision[-]making does. . . . I don't know how that limitation is removed, but there's certainly not in this case enough evidence to remove it . . . given Ms. Hannah's recitation of things that have happened since the dissolution." RP at 23. The court upheld the finding of bad faith because there was no legal or factual basis for Mr. McAdams's request.

Mr. McAdams timely appealed.

## ANALYSIS

### MUTUAL DECISION-MAKING

Mr. McAdams argues the trial court erred in finding there was not adequate cause to modify the parenting plan to grant him mutual decision-making. We disagree.

We review a trial court's adequate cause determination for an abuse of discretion. *In re Parentage of Jannot*, 149 Wn.2d 123, 126, 65 P.3d 664 (2003). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable

9

No. 39423-9-III
*Marr. of Hannah & McAdams*

grounds or untenable reasons."[3] *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47,

940 P.2d 1362 (1997).

Mr. McAdams petitioned to modify the parenting plan based on RCW

26.09.260(10), which gives the court discretion to "order adjustments to any of the

nonresidential aspects of a parenting plan upon a showing of a substantial change of

circumstances of either parent or of a child, and the adjustment is in the best interest of

the child." Mr. McAdams argued below that the substantial change in circumstance was,

first, his completion of treatment and nonoccurrence of domestic violence and substance

abuse, and second, their daughter's questions about gender identity. On appeal, he

abandons the second argument and argues only that his changed circumstances justified

modifying the parenting plan to provide for mutual decision-making.

---

[3] Although he does not explicitly identify how the trial court abused its discretion, Mr. McAdams appears to argue its decision was based on untenable reasons because it applied the wrong legal standard for determining whether mutual decision-making was allowed. *See In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997) ("A court's decision . . . is based on untenable reasons if it is based on an incorrect standard.").

No. 39423-9-III
*Marr. of Hannah & McAdams*

Mr. McAdams concedes that sole decision-making is mandatory where

RCW 26.09.191 findings are entered.[4]  He argues the relevant question is "whether

joint-decision-making can be restored, and, if so, under what conditions."  Reply Br. of

Appellant at 2.  His argument relies almost exclusively on a recent case from Division

One of this court, *In re Marriage of DeVogel*, 22 Wn. App. 2d 39, 509 P.3d 832 (2022).[5]

We begin by discussing that case.

In *DeVogel*, the parties' permanent parenting plan included findings that the father

had a history of domestic violence toward an adult son, and the mother had parental

problems including withholding the children and abusive use of conflict.  *Id.* at 43.  The

---

[4] Mr. McAdams nonetheless suggests that while sole decision-making is mandatory in an *original* parenting plan when there is a history of domestic violence, it is unclear what is allowed in a subsequent modification.  Mr. McAdams's distinction is illusory; Washington law does not contemplate "original" and "subsequent" parenting plans.  It contemplates "temporary" and "permanent" parenting plans. *See* RCW 26.09.004(3), (4); RCW 26.09.181-.197.  A modification results in a new, permanent parenting plan.  *See* RCW 26.09.004(3) ("'Permanent parenting plan' means a plan for parenting the child . . . incorporated in any final decree or decree of modification in an action for dissolution of marriage.").  In either a temporary or permanent parenting plan, the court "shall not" order joint decision-making where there is a finding of a history of domestic violence.  RCW 26.09.191(1)(c).

[5] Mr. McAdams also points to *In re Marriage of Bodge*, No. 79559-7-I, (Wash. Ct. App. June 15, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/795597.pdf, a factually distinguishable and unhelpful case.  There, the parties' parenting plan expressly provided that restrictions based on the finding of the father's history of domestic violence could be lifted on his completion of domestic violence treatment. *Id.*, slip op. at 3.  Here, the parties' parenting plan contains no such provision.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39423-9-III
*Marr. of Hannah & McAdams*

court gave the mother sole decision-making and the majority of the residential time. *Id.*

The plan required the father to complete domestic violence treatment before his

residential time increased. *Id.* Two years later, both parents separately petitioned to

modify the parenting plan. *Id.* at 44. After trial, the court entered a new permanent

parenting plan that gave the father sole decision-making and placed the children with him

for the majority of the residential time. *Id.* The mother appealed, arguing in part the

court erred by awarding sole decision-making and majority residential time to the father

despite his history of domestic violence. *Id.* at 45.

We affirmed on both issues. *Id.* As to decision-making, we rejected the mother's

contention that RCW 26.09.191(1) forbids the court from giving a parent with a history of

domestic violence any decision-making authority. *Id.* at 46. The plain language of the

statute only restricts mutual decision-making, which was not ordered. *Id.* As to the

residential time, we noted that under RCW 26.09.191(2), a court can choose to impose

limitations on residential time that include completion of treatment. *Id.* The parties'

original parenting plan did just that, and the father had completed the recommended

treatment. *Id.* at 46-47. At the time the court entered the new parenting plan, it found

there had been no instances of domestic violence since the parties separated five years

earlier. *Id.* at 47. The original limitations had been completed, and the court was not

12

No. 39423-9-III
*Marr. of Hannah & McAdams*

required to impose new limitations when there were no new domestic violence concerns.
*Id.*

Mr. McAdams argues that *DeVogel* shows that it is possible to cure a domestic violence limitation such that mutual decision-making can be restored. The case does no such thing.

First, *DeVogel* is silent about when a parent can cure a limitation such that mutual decision-making can be restored. The extent of the court's discussion of decision-making was to note that because the father had sole decision-making, the provision did not violate RCW 26.09.191(1), which prohibits only mutual decision-making. The propriety of mutual decision-making was not an issue in front of the court. And contrary to Mr. McAdams's repeated assertions, the *DeVogel* court did not consider the father's treatment and nonoccurrence of domestic violence in considering whether it was appropriate to give him sole decision-making. The court only discussed that information in regard to the father's residential time, an area in which the trial court has considerable discretion crafting limitations. *See* RCW 26.09.191(2). By contrast, RCW 26.09.191(1) makes

13

No. 39423-9-III
*Marr. of Hannah & McAdams*

limitations on mutual decision-making mandatory in the enumerated circumstances.[6]

Second, the court's discussion of the father's treatment is in no way analogous to Mr. McAdams's situation. There, treatment *was* the limitation on residential time in the parenting plan. *See* RCW 26.09.191(2)(m)(i) (A limitation on residential time may include "completion of relevant counseling or treatment."). Because the father successfully completed treatment, such a limitation was essentially moot in the new parenting plan. Because the father had not engaged in domestic violence in the five years since the parties' separation, no new limitations were necessary.

---

[6] The legislature recognized that true mutual decision-making is not possible in situations where the relationship was marred by domestic violence. This is because the abusive parent will likely continue to use intimidation to control the abused parent:

> The rarity of equality in decision-making between an abuser and his victim renders joint decision-making unworkable. The occurrence of domestic violence within a relationship, regardless of how it is categorized, suggests that the batterer is in a superior position of power. The propensity to abuse also provides important information about the character of the batterer. If he is an abuser, he is more likely to use power to dominate and intimidate the other parent. By ordering joint legal custody, thus requiring joint decision-making, the court places the victim in an impossible position—she is forced to negotiate with her batterer despite her lack of power within that relationship.

Dana Harrington Conner, *Back to the Drawing Board: Barriers to Joint Decision-Making in Custody Cases Involving Intimate Partner Violence*, 18 Duke J. Gender L. & Pol'y 223, 227 (2011) (footnote omitted).

No. 39423-9-III
*Marr. of Hannah & McAdams*

Here, by contrast, Mr. McAdams completed all treatment *before* the permanent parenting plan was entered in 2020, yet the trial court still found it necessary to enter a finding of domestic violence and give Ms. Hannah sole decision-making, as well as order the various other limitations in section 14 of the parenting plan. Additionally, the court found that in the approximately two years since the parties' divorce, Mr. McAdams had continued to engage in conduct seemingly designed to continue to exert power and control over Ms. Hannah.

Mr. McAdams also objects to the trial court's failure to consider the child's best interests. RCW 26.09.260(10) directs that an adjustment to a nonresidential aspect of the parenting plan requires both a substantial change in circumstances *and* an adjustment that is in the child's best interest. If either element is not met, the modification should not be granted. Here, the trial court found there was no substantial change in circumstances; thus, it could not adjust the parenting plan even if the adjustment was in the child's best interest. It did not err in stopping its analysis after it found no substantial change in circumstances.

We conclude that the trial court did not abuse its discretion when it found a lack of adequate cause to set Mr. McAdams's petition for a trial.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39423-9-III
*Marr. of Hannah & McAdams*

ATTORNEY FEES AT TRIAL

Mr. McAdams contends the trial court erred in assessing attorney fee sanctions against him. Limiting his arguments to those properly raised, we disagree.

Mr. McAdams argues he should not have been sanctioned for his petition for modification, discussing at length CR 11 and frivolous lawsuits. But Mr. McAdams was not sanctioned under CR 11. The award of attorney fees was based on RCW 26.09.260(13). "To be successful in requesting attorney's fees under [RCW 26.09.260], a party need only show that the motion to modify was brought in bad faith." *In re Marriage of Low*, 44 Wn. App. 6, 9, 720 P.2d 850 (1986).

Bad faith is a factual finding that we review for substantial evidence. *In re Marriage of Rideout*, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003). Mr. McAdams does not discuss RCW 26.09.260(13) or adequately challenge the trial court's factual finding that his petition was brought in bad faith.

In a section titled "Issues on Appeal," which we will construe as his assignments of error, *see* RAP 10.3(a)(4), Mr. McAdams does contend there was not substantial evidence he filed his petition in bad faith. Opening Br. of Appellant at 6 (some capitalization omitted). He devotes no argument to this contention in his opening brief, however, only discussing the issue in his reply. This is insufficient for our review.

16

No. 39423-9-III
*Marr. of Hannah & McAdams*

*See* RAP 10.3(a)(6); *In re Marriage of Angelo*, 142 Wn. App. 622, 628 n.3, 175 P.3d

1096 (2008) ("We do not consider assignments of error unsupported by argument or

authority."); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549

(1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant

consideration."). We constrain our discussion to the issues argued in Mr. McAdams's

opening brief, to which Ms. Hannah had an opportunity to respond.

Mr. McAdams's argument against awarding attorney fees is that the "case law is

sufficiently opaque" that his petition for modification was not frivolous. Opening Br. of

Appellant at 13. As discussed above, his argument that mutual decision-making is

allowed is based on a complete misreading of the case law and a misrepresentation of Mr.

McAdams's circumstances, and it further plainly runs counter to unambiguous statutory

authority. The trial court correctly observed there was no "legal or factual basis" to order

joint decision-making as a modification under RCW 26.09.260(10). RP at 23.

Mr. McAdams argues there was no legal basis for awarding attorney fees on

revision because he has a right to revise a commissioner's ruling. But Mr. McAdams's

motion to revise the commissioner's ruling was clearly a continuation of his petition to

modify the parenting plan—if his motion had been successful, the court would have

found adequate cause to hold a hearing on the modification. As a continuation of the

17

No. 39423-9-III
*Marr. of Hannah & McAdams*

modification action, it was subject to the provisions of RCW 26.09.260(13). *See In re Marriage of Moody*, 137 Wn.2d 979, 994, 976 P.2d 1240 (1999). The existence of an absolute right to revision does not insulate Mr. McAdams from the provisions of RCW 26.09.260(13). *See Low*, 44 Wn. App. at 9 (discussing the analogous provision in former RCW 26.09.260(2) (1973)). A further award of attorney fees was legally permissible.

ATTORNEY FEES ON APPEAL

Ms. Hannah requests attorney fees on appeal under RCW 26.09.140 and RAP 18.9. For the reasons explained below, we grant her RAP 18.9 request.

RCW 26.09.140 permits a court to award fees for "maintaining or defending any proceeding under this chapter" based on the financial resources of the parties. Ms. Hannah has not filed an affidavit of financial need with the court in accordance with RAP 18.1(c), so we cannot grant fees under RCW 26.09.140.

RAP 18.9(a) permits an award attorney fees as a sanction for filing a frivolous appeal. An appeal is frivolous "'if there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there [is] no reasonable possibility of reversal.'" *State v. Chapman*, 140 Wn.2d 436, 454, 998 P.2d 282 (2000) (alteration in original) (quoting *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888,

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39423-9-III
*Marr. of Hannah & McAdams*

905, 969 P.2d 64 (1998)).  As discussed above, there is no legal or factual support for Mr. McAdams's petition to modify the parenting plan.  In addition, his challenge to attorney fees was directed at nonexistent CR 11 sanctions.  He failed to raise any debatable issue that might result in a reasonable possibility of reversal.  Subject to her compliance with RAP 18.1(d), we award Ms. Hannah her reasonable attorney fees on appeal.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____          _____
Pennell, J.                                              Staab, J.

19